

**Office of the Attorney General**
**Leevin Taitano Camacho**
Attorney General of Guam
**Litigation Division**
590 South Marine Corps Dr.
Suite 901, ITC Building
Tamuning, Guam 96913
(671) 475-3324
civillitigation@oagguam.org

Attorneys for all defendants

# IN THE DISTRICT COURT OF GUAM

| | | |
|---|---|---|
| SHANDHINI RAIDOO, et al., | ) | Civil Case No. 20-00029 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **DEFENDANTS' OPPOSITION TO** |
| vs. | ) | **PLAINTIFFS' MOTION FOR** |
| | ) | **PRELIMINARY INJUNCTION** |
| LEEVIN TAITANO CAMACHO, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

# TABLE OF CONTENTS

Table of Authorities ................................................................................................ iii

INTRODUCTION ....................................................................................................... 1

DISCUSSION ............................................................................................................. 3

  I.  PLAINTIFFS ARE NOT LIKELY TO SUCCEED ON THE MERITS ............................ 4

    A. The In-Person Information Requirement Realizes A Legitimate State Interest And Is Not A Substantial Obstacle ........................................................................................ 4

      1. The In-Person Information Requirement Imposes No Burden On Women Seeking Abortion, Nor Any Burden That Is Not Incidental To The Law ....................................... 4

        a.    Plaintiffs' Claim Of A "Burden" Caused By The In-Person Information Requirement Is Illusory .................................................................................... 4

        b.    Any Burden Created By The In-Person Information Requirement Is Incidental, Which Courts Have Found To Be Unconstitutional .................................. 7

      2. The Supreme Court Upholds The Legitimate State Interest to Attempt to Persuade Patients to Advance Fetal Life, Thus The In-Person Information Requirement Is Not A Substantial Obstacle ........................................................................................ 10

        a.    Planned Parenthood v. Casey Undue Burden Standard ................................. 10

        b.    The *Casey* Undue Burden Standard Remains Controlling Precedent ............ 12

        c.    The Ninth Circuit Court of Appeals Abides By *Casey* ................................. 13

      3. Guam's In-Person Information Requirement Is Not An Undue Burden On Women's Right To A Pre-Viability Abortion ................................................................... 14

      4. The In-Person Information Requirement Is Reasonably Related To Guam's Legitimate Interest In Promoting Fetal Life .............................................................. 16

        a. The In-Person Information Requirement Has A Rational Basis .......................... 16

        b.    The In-Person Information Requirement Best Effectuates Guam's Legitimate Interest To Promote Fetal Life .................................................................. 17

i

B.  The Requirement That A Woman Contemplating An Abortion Be Given The Information Required By Law "Individually" In A "Private Room" Does Not Preclude Her From Defining The Scope Of Her Privacy Right ................................................... 20

II.  PLAINTIFFS WILL NOT SUFFER IRREPARABLE HARM IF  PRELIMINARY INJUNCTION IS DENIED ............................................................................... 22

III. THE BALANCE OF EQUITIES TIPS TOWARD DEFENDANTS AND PRELIMINARY INJUNCTION WOULD INJURE THE PUBLIC INTEREST ............. 23

CONCLUSION ..................................................................................................... 25

CERTIFICATE OF SERVICE ................................................................................ 26

# Table of Authorities

## Cases

*A Woman's Choice-East Side Women's Clinic v. Newman*, 305 F.684 (7th Cir. 2002) ............... 23

*American Legion v. American Humanist Ass'n*, 139 S.Ct. 2067 (2019) ..................................... 24

*Baggett v. Bullitt*, 377 U.S. 360 (1964) ....................................................................................... 23

*Barnes v. Moore*, 970 F.2d 12 (5th Cir. 1992) ..................................................................... 15, 21

*Bristol Regional Women's Center v. Slatery*, No. 20-6267, --- F.3d ---, 2021 WL 650893
    (6th Cir. Feb. 19, 2021) ................................................................................................... 14, 15

*Cardenas v. United States*, 826 F.3d 1164 (9th Cir. 2016) ......................................................... 13

*Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427
    (6th Cir. 2004) ........................................................................................................................ 24

*Cincinnati Women's Servs., Inc. v. Taft*, 468 F.3d 361 (6th Cir.2006) ....................................... 15

*DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989) ..................................... 8

*Doe #1 v. Trump*, 984 F.3d 848 (9th Cir. 2020) ........................................................................... 3

*Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073 (9th Cir. 2014) ............................................... 23

*EMW Women's Surgical Center, P.S.C. v. Friedlander*, 978 F.3d 418 (6th Cir. 2020) .............. 13

*Fargo Women's Health Organization v. Schafer*, 18 F.3d 526 (8th Cir. 1994) .......................... 15

*FCC v. Beach Communications, Inc.*, 508 U.S. 307 (1993) ........................................................ 17

*Gonzales v. Carhart*, 550 U.S. 124 (2007) ......................................................................... passim

*Harris v. McRae*, 448, U.S. 297, 316, 317-18 (1980) ............................................................ 9, 18

*June Medical Services L.L.C. v. Russo*, 591 U.S. ___, 140 S.Ct. 2103 (2020) ............... 12, 13, 16

*Karlin v. Foust*, 188 F.3d 446 (7th Cir. 1999) ........................................................... 14, 15, 21

*Law v. Zukerman*, 307 F. Supp. 2d 705 (D. Md. 2004) ............................................................. 21

*League of Women Voters v. Hargett*, 400 F.Supp.3d 706 (M.D. Tenn. 2019) ........................... 24

*Lopez v. Brewer*, 680 F.3d 1068 (9th Cir. 2012) ......................................................................... 3

*Maher v. Roe*, 432 U.S. 464 (1977) ............................................................................................. 9

*Marks v. United States*, 430 U.S. 188 (1977) ............................................................................. 13

*Maryland v. King*, 567 U.S. 1301 (2012) ................................................................................... 23

*Mazurek v. Armstrong*, 520 U.S. 968 (1997) ............................................................................... 4

*McCormack v. Hiedeman*, 694 F.3d 1004, (9th Cir. 2012) ......................................... 10, 19, 24

*New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345 (1977) .............................. 23

iii

*Page v. Cuomo*, 478 F.Supp.3d 355 (N.D. N.Y. 2020) ................................................... 22

*Planned Parenthood of Arkansas & E. Oklahoma v. Jegley*, 864 F.3d 953
  (8th Cir. 2017)................................................................................................................ 3

*Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992) ........... passim

*Planned Parenthood v. Arizona*, 227 Ariz. 262 (Ariz. 2011) ....................................... 20

*Planned Parenthood v. Danforth*, 428 U.S. 52 (1976) ........................................... 7, 19

*Planned Parenthood v. Daugaard*, 799 F.Supp.2d 1048 (D.S.D. 2011) ....................... 6

*Planned Parenthood v. Miller*, 63 F.3d 1452 (8th Cir.1995) ..................................... 15

*Planned Parenthood v. Van Hollen*, 738 F.3d 786 (7th Cir. 2013) ...................... 13, 14

*South Bay United Pentecostal Church v. Newsom*, 985 F.3d 1128
  (9th Cir. Jan. 22, 2021) ................................................................................................ 4

*Tucson Woman's Clinic v. Eden*, 379 F.3d 531 (9th Cir. 2004)................................ 11, 13, 14, 18

*Tucson Women's Center v. Arizona Medical Board*, 666 F.Supp.2d 1091
  (D. Ariz. 2009)............................................................................................................. 16

*Turley v. Giuliani*, 86 F.Supp.2d 291 (S.D. N.Y. 2000) ............................................ 22

*U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749 (1989) ............. 22

*Utah Women's Clinic v. Leavitt*, 844 F.Supp. 1482 (D. Utah 1994), *rev'd in part on other
  grounds, dismissed in part,* 75 F.3d 564 (10th Cir. 1995)....................................... 15

*Vance v. Bradley*, 440 U.S. 93 (1979) ....................................................................... 17

*Whole Woman's Health v. Hellerstedt*, 579 U.S. ___, 136 S.Ct. 2292 (2016)................ 10, 12, 13

*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008)................................ 3, 23

**Federal Statutes**

Pub. Law 104-191 (Aug. 21, 1996), *Health Insurance Portability and Accountability
  Act of 1996* ("HIPAA")........................................................................................... 7, 21

**Guam Statutes**

9 GCA § 31.20 ............................................................................................................... 1

9 GCA § 31.21 ............................................................................................................... 1

10 GCA § 3218.1 ................................................................................................... passim

iv

**Other**

2018 Guam Statistical Yearbook, Bureau of Stat. & Plans, Office of the Governor (2019) ...... 7, 9

Planned Parenthood, *How Safe is the Abortion Pill?*
http://www.plannedparenthood.org/learn/abortion/the -abortion-pill/how-safe-is-the-abortion-pill (visited March 5, 2021) .......................................................................................................... 5

v

## INTRODUCTION

Shandhini Raidoo, M.D., M.P.H. and Bliss Kaneshiro, M.D., M.P.H., are Guam-licensed physicians with medical practices based in Hawaii, who seek to prescribe medications via telemedicine to induce abortions in Guam. They brought a constitutional challenge to two Guam laws that have been on the books since 1978 and 2012, 9 GCA § 31.20 (P.L. 13-185 (Sept. 2, 1976)); and § 31.21 (P.L. 14-122 (Apr. 18, 1978)); and 10 GCA § 3218.1 (P.L. 31-235) (Nov. 1, 2012). Plaintiffs' argument with 9 GCA §§ 31.20 and 31.21 has been resolved, leaving their contention that 10 GCA § 3218.1 is unconstitutional.

Specifically, plaintiffs take issue with 10 GCA §§ 3218.1(b)(1), (b)(2), and (b)(4), which mandate that the treating physician or other "qualified person" ("an agent of the physician who is a psychologist, licensed social worker, licensed professional counselor, registered nurse, or physician," per § 3218.1(a)(13)) inform the patient of certain information listed in 10 GCA §§3 218.1(b)(1) &(b)(2) [the "State-mandated information"] 24 hours before the abortion and, more importantly here, in person [the "in-person information requirement"].

Contrary to their repeated assertions in the complaint, motion for preliminary injunction, and declarations, plaintiffs do not seek to "restore" abortion to Guam. They are asking the court to recognize a right to medication abortion via telemedicine without having to comply with the "in-person information requirement" of 10 GCA § 3218.1(b). The doctors' urgency is not due to any *new* development in the law, but is due to their allegation that the last two physicians who performed abortions in Guam have retired, and the worldwide COVID-19 pandemic that began in March 2020 has resulted in travel restrictions which, until recently, required quarantine for visitors to both Guam and Hawaii.

1

In light of these two unrelated events, neither of which were caused by the defendants, two Hawaii-based doctors assert that unidentified prospective patients' access to medication abortion should be facilitated by this court declaring the "in-person information requirement" of the informed consent law to be an undue, and thus an unconstitutional, burden on the right to abortion on Guam. However, U.S. Supreme Court precedent would find the in-person information requirement as reasonably related to Guam's legitimate state interest to promote the advancement of fetal life, and that the law does not place a substantial obstacle in the path of women seeking an abortion.

Unlike most challenges to abortion laws which focus on recent enactments or rules that are alleged to impose an undue burden on a woman's right to an abortion, plaintiffs challenge a law that has been in effect for nine years without any abortion provider suggesting that the part of the law they challenge created an undue burden on any of their patient's access to pre-viability abortion. Plaintiffs do not seek to preserve the pre-existing status quo pending a determination on the merits, they seek to *change* the status quo in order to expand their medical practices from Hawaii to offer medication abortions across the ocean to Guam via telemedicine.

Plaintiffs have failed to establish that they are likely to succeed on the merits or will suffer irreparable injury if the status quo is maintained. Both the balance of the equities and the public interest also align with Defendants' position. Thus, plaintiffs' motion for preliminary injunction should be denied.

## DISCUSSION

## STANDARD OF REVIEW

In order to demonstrate they are entitled to a preliminary injunction, plaintiffs must satisfy

four factors:

> "A plaintiff seeking a preliminary injunction must establish [1] that he is
> likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the
> absence of preliminary relief, [3] that the balance of equities tips in his favor, and
> [4] that an injunction is in the public interest." *Winter v. Natural Res. Def. Council,*
> *Inc.*, 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). "Likelihood of success
> on the merits is the most important *Winter* factor." *Disney Enters., Inc. v. VidAngel,*
> *Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) (simplified).

*Doe #1 v. Trump*, 984 F.3d 848, 861–62 (9th Cir. 2020).

"Where a preliminary injunction is sought to enjoin the implementation of a duly enacted

state statute [] the moving party must make a more rigorous showing that it is likely to prevail on

the merits. This is necessary to ensure that preliminary injunctions that thwart a state's

presumptively reasonable democratic processes are pronounced only after an appropriately

deferential analysis." *Planned Parenthood of Arkansas & E. Oklahoma v. Jegley*, 864 F.3d 953,

957–58 (8th Cir. 2017) (internal quotes and citation omitted).

"A preliminary injunction is an extraordinary remedy never awarded as of right…In

exercising their sound discretion, courts of equity should pay particular regard for the public

consequences in employing the extraordinary remedy of injunction." *Winter v. Natural Resources*

*Defense Council, Inc.*, 555 U.S. 7, 24 (2008) (internal quotes and citations omitted); *see*, *also*,

*Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) ("A preliminary injunction is 'an

extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear

showing, carries the burden of persuasion.' ") (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972

3

(1997)); *accord, South Bay United Pentecostal Church v. Newsom*, 985 F.3d 1128,1139-40 (9th

Cir. Jan. 22, 2021).

## I.     PLAINTIFFS ARE NOT LIKELY TO SUCCEED ON THE MERITS

### A. The In-Person Information Requirement Realizes A Legitimate State Interest And Is Not A Substantial Obstacle

The law plaintiffs challenge does not create a burden for women's right to choose an abortion, and it does not prevent plaintiffs from performing abortions on Guam. Any burden, if at all, would merely be incidental to the law, not the law itself, and thus, not unconstitutional. By any means, it does not place a substantial obstacle in the path of women seeking an abortion.

#### 1. The In-Person Information Requirement Imposes No Burden On Women Seeking Abortion, Nor Any Burden That Is Not Incidental To The Law

##### a.     Plaintiffs' Claim Of A "Burden" Caused By The In-Person Information Requirement Is Illusory

Plaintiffs' claim that the in-person information requirement of § 3218.1 forces women seeking an abortion to leave Guam is spurious. The required office or clinic visit poses, at worst, an inconvenience, but hardly an "undue burden" or "substantial obstacle" ruled unconstitutional by courts. The argument that the clinic or office visit is burdensome is negated by the fact that a woman would have to visit a health care provider on Guam anyway to obtain an ultrasound or other diagnostic test, to determine if she is even eligible for a telemedicine medication abortion. Plaintiffs concede that this visit is medically necessary before prescribing abortion medication to ascertain the gestational age of the fetus and to rule out contraindicated ectopic pregnancy.[1] This is no burden.

---

[1] *See Complaint*, at ¶ 169.b. ("Any necessary exams, ultrasounds, and lab tests will be performed at medical facilities near the patient rather than at the [medication] abortion provider's office."), ¶¶ 178-79; *Decl. of Sierra Washington, M.D.*, Complaint, Ex. 3, at ¶¶ 32, 36 ("This is important to understand that the use of telemedicine does not preclude the reliance on certain in-person tests, i.e., ultrasounds or blood tests, to assess a person's eligibility for medication abortion.") and ¶ 90 ("A patient's eligibility can be determined

4

Plaintiffs must also concede that if they were to prescribe abortion medication to women on Guam, their patients may also need to see an obstetrician/gynecologist in person for a follow-up examination to determine that no additional medication or physical evacuation procedure is required to resolve what the initial medication administration may not have satisfactorily completed.[2] Planned Parenthood advises regarding medication abortion:

> Serious complications are really rare, but can happen. These include: the abortion pills don't work and the pregnancy doesn't end; some of the pregnancy tissue is left in your uterus; blood clots in your uterus; bleeding too much or too long; infection; allergic reaction to one of the medicines. These problems aren't common. And if they do happen, they're usually easy to take care of with medication or other treatments. … If you have complications during your medication abortion, you may have to go back to the doctor's office or health center. … You may need another dose of medication or to have an in-clinic abortion to end the pregnancy.[3]

What plaintiffs seek is permission from the court to administer abortion medication to patients from thousands of miles away and then, if complications do occur, leave them to seek on-island care and treatment on their own. *See Decl. of Sierra Washington, M.D.*, Complaint, Ex. 3, at ¶¶ 99-102 (patients' follow-up care "can be safely and effectively managed by either medical staff in an emergency room at any hospital in Guam or by any local clinician in Guam who provides obstetrical and/or gynecological care").

The only "burden" there might be is to plaintiffs' business model which might involve them coming to Guam to meet their patients in person, or to affiliate with "qualified person" in

---

with ultrasounds and lab results obtained locally"); *Decl. of Bliss Kaneshiro, M.D.*, Complaint, Ex. 4, at ¶ 56; *Decl. of Shandhini Raidoo, M.D.*, Complaint, Ex. 5, at ¶ 55.

[2] See *Decl. of Sierra Washington, M.D.*, Complaint, Ex. 3, at ¶ 43 ("the patient is advised to follow up with their prescribing clinician 7 to 28 days after completing the medication abortion regimen to ensure the abortion was successful"); *Decl. of Bliss Kaneshiro, M.D.*, Complaint, Ex. 4, at ¶¶ 57, 66-67; *Decl. of Shandhini Raidoo, M.D.*, Complaint, Ex. 5, at ¶¶ 56, 65-66.

[3] Planned Parenthood, *How Safe is the Abortion Pill?* http://www.plannedparenthood.org/learn/abortion/the -abortion-pill/how-safe-is-the-abortion-pill (visited March 5, 2021).

5

Guam to provide their patients the required information in person. Plaintiffs acknowledge that their patients must see a local health care provider for necessary diagnostic testing anyway, such as an ultrasound. The reason for plaintiffs' unwillingness is unclear; possibly they are cost-averse to affiliating. Regardless, it is plaintiffs who manufacture the apparition of a "burden," yet, in reality, the burden is to their own interests, and not their patients'. Plaintiffs simply refuse to associate with a Guam health care provider or other "qualified person" (a physician, nurse, psychologist, counselor, or social worker, per 10 GCA § 3218.1(a)(13)) because it is one aspect of their practice they could not perform themselves remotely. However, "[t]he law need not give abortion doctors unfettered choice in the course of their medical practice." *Gonzales v. Carhart*, 550 U.S. 124, 163 (2007). Plaintiffs attempt to skew the constitutional analysis to characterize the requirement as a "burden" merely because it does not serve their particular business needs.[4]

Plaintiffs assert almost as an aside that if not for other medical reasons, their patients should not have to make an additional trip to "another clinician" to receive the State-mandated information in person because they would not otherwise have to reveal to that person that they are considering an abortion, which plaintiffs claim invades their patients' privacy. (Pl. Mtn. at 29.)[5] However all

---

[4] In fact, plaintiffs declare they "already have professional relationships with OB/GYNS in Guam" and "are aware of multiple supportive physicians in Guam who are willing to provide pre- and post-abortion testing and care to abortion patients." *Decl. of Bliss Kaneshiro, M.D.*, Complaint, Ex. 4, at ¶¶ 80, 81; *Decl. of Shandhini Raidoo, M.D.*, Complaint, Ex. 5, at ¶¶ 77, 78. Thus, plaintiffs cannot honestly state that Guam law prohibits telemedicine medication abortion on Guam, when plaintiffs concede they could affiliate with local providers who could also easily provide the State-mandated information to their patients in person. In truth, plaintiffs are intransigent for their own principle (that is, that they should not have to arrange for their already-engaged, local agent provider to communicate the information in person), rather than for the sake of supporting women's reproductive health on Guam.

[5] Plaintiffs' cited cases on this issue are unavailing. (Pl. Mtn. at 29.) Two of their cases do not even involve legislation or regulations that specifically raise a privacy issue, and the third case involved a law requiring abortion seekers to go to a separate "pregnancy help center" to be interviewed by individuals who are not "another clinician" (*Id.*) that plaintiffs complain could provide the information in the case of Guam. *See Planned Parenthood v. Daugaard*, 799 F.Supp.2d 1048, 1061 (D.S.D. 2011) ("There is an inherent difference between compelling a woman to disclose her decision to undergo an abortion to a 'pregnancy help center' and a woman freely disclosing this decision to someone she chose to provide her with the

6

that § 3218.1 requires is that the information be provided by a physician or the *agent* of the physician (hence, they would be acting for the plaintiffs) who may be a nurse, psychologist, licensed social worker, licensed professional counselor, or another physician. Not only would the physician's agent be under their control, but they are all persons who are not only ethically required by their respective professions to respect patient confidentiality, they are legally required to keep the patient's information private and confidential under HIPAA, *The Health Insurance Portability and Accountability Act of 1996*, Pub. Law 104-191 (Aug. 21, 1996). Finally, the government is constitutionally authorized to require abortion providers to make reports so long as the patient's information is kept confidential. *See, e.g., Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 886 (1992); *Planned Parenthood v. Danforth*, 428 U.S. 52, 80-81 (1976).

### b. Any Burden Created By The In-Person Information Requirement Is Incidental, Which Courts Have Found To Be Unconstitutional

What burden there may be is incidental at best. The fact that women have to leave island for an abortion is the result of market forces, specifically, the fact that two resident abortion providers retired in 2016 and 2018. It is not the fault of the law.[6] Moreover, for those women who would choose or may be required to have surgical abortion over medication abortion, they would have to obtain them off-island anyway due to the realities of the market, not due to the law.

The Supreme Court was very clear in *Planned Parenthood v. Casey* that a law that causes a burden incidentally is not unconstitutional: "Numerous forms of state regulation might have the incidental effect of increasing the cost or decreasing the availability of medical care, whether for

---

medical services she seeks."). Here, to the contrary, the physician or qualified person giving the information would be plaintiffs' affiliated agent.

[6] This is evidenced by there being no appreciable decrease in the number of abortions on Guam following the 2012 law's passage, at least up to 2017, which is the last year for which such statistics are publicly available. *See* Guam Bureau of Stat. & Plans, Office of the Governor, 2018 *Guam Statistical Yearbook*, 205-208 (2019),

7

abortion or any other medical procedure. The fact that a law which serves a valid purpose, one not designed to strike at the right itself, has the incidental effect of making it more difficult or more expensive to procure an abortion cannot be enough to invalidate it." 505 U.S. 833, at 874 (citations omitted). "Only where state regulation imposes an undue burden on a woman's ability to make this decision does the power of the State reach into the heart of the liberty protected by the Due Process Clause." *Id. see also*, *Gonzales*, 550 U.S. at 157-158. The Constitution may prohibit governments from imposing undue burdens on a woman's right of access to an abortion pre-viability. But it does not require that the government take affirmative steps to assist abortion providers simply because market forces have created a vacuum. The Due Process Clause "is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without 'due process of law,' but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means." *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989).

Plaintiffs allege that § 3218.1's requirement that the State-mandated information be provided in person prevents the practice of telemedicine medication abortion on Guam. *Decl. of Bliss Kaneshiro, M.D.*, Complaint, Ex. 4, at ¶ 93; *Decl. of Shandhini Raidoo, M.D.*, Complaint, Ex. 5, at ¶ 89. This statement is simply false. There is nothing to prevent them from engaging local health care professionals to provide the required information in person, leaving plaintiffs to engage in the rest of what is required remotely.[7] While plaintiffs insist that the in-person requirement

---

[7] In fact, plaintiffs declare they "already have professional relationships with OB/GYNS in Guam" and "are aware of multiple supportive physicians in Guam who are willing to provide pre- and post-abortion testing and care to abortion patients." *Decl. of Bliss Kaneshiro, M.D.*, Complaint, Ex. 4, at ¶¶ 80, 81; *Decl. of Shandhini Raidoo, M.D.*, Complaint, Ex. 5, at ¶¶ 77, 78. Thus, plaintiffs cannot truthfully state that Guam law prohibits telemedicine medication abortion on Guam, when plaintiffs concede they could affiliate with local providers who could also easily provide the State-mandated information to their patients in person. In truth, plaintiffs are intransigent for their own principle, that they should not have to arrange for their

prevents them from practicing telemedicine medication abortion on Guam altogether which, in turn, prevents women from obtaining abortions on Guam and forcing them to obtain them off-island, that is simply untrue. (Pl. Mtn. at 25).

As a matter of causation, the harsh reality that there are currently no abortion providers in Guam is not due to the law plaintiffs challenge. Not only did abortions on Guam fail to appreciably decrease for years after the passage of § 3218.1 (11.2% decrease on average over 5 years subsequent, and increasing in 2016), but medication abortions did not decrease either and continued to represent the same small fraction (<1%-3% annually) of Guam abortions overall as before. (Guam Bureaus of Stat. & Plans, Office of the Governor, 2018 *Guam Statistical Yearbook*, 206 (2019)). The statistics plaintiffs offer do not bear out their claims.

The fact that a confluence of unrelated events – the retirement of two doctors and the COVID-19 pandemic – has created an incidental burden that did not exist before, resulting in women who can afford it leaving Guam for an abortion does not make the in-person informed consent requirement unconstitutional. "[A]lthough government may not place obstacles in the path of a woman's exercise of her freedom of choice, it need not remove those not of its own creation. Indigency falls in the latter category." *Harris v. McRae*, 448, U.S. 297, 316, 317-18 (1980); see, also, *Maher v. Roe*, 432 U.S. 464, 474 (1977) ("An indigent woman who desires an abortion suffers no disadvantage as a consequence of Connecticut's decision to fund childbirth; she continues as before to be dependent on private sources for the service she desires. The State may have made childbirth a more attractive alternative, thereby influencing the woman's decision, but it has imposed no restriction on access to abortions that was not already there.").

Plaintiffs do not argue that § 3218.1's in-person information requirement caused abortion providers to retire. But, they do blame it for "forcing" Guam women to travel off-island to obtain

---

(already-engaged) local agent provider to communicate the information in person, rather than for the sake of supporting women's reproductive health on Guam.

9

an abortion. Plaintiffs' appeal to cases involving long-distance driving is misplaced. (Pl. Mtn. at 26). What is at issue is the burden the particular travel creates, not necessarily the distance traveled. That is not the same as placing a substantial obstacle in their path. *See, e.g., Whole Woman's Health v. Hellerstedt*, 579 U.S. ___, 136 S.Ct. 2292, 2313 (2016) ("We recognize that increased driving distances do not always constitute an 'undue burden.' "). For at least as long as the law has been in effect, courts have recognized the simple reality that abortion providers are not generally ubiquitous, and women often have to "travel long distances to the closest abortion provider." *McCormack v. Hiedeman*, 694 F.3d 1004, 1017, n.9 (9th Cir. 2012) ("Eighty-seven percent of all counties in the United States are without an abortion provider. … Rural women are even more affected by the lack of abortion providers. Ninety-seven percent of nonmetropolitan counties have no abortion provider.") *See, Casey*, 505 U.S. at 885-886. The in-person information requirement is not the reason Guam women need to travel off-island for an abortion. Market forces are.

> **2.    The Supreme Court Upholds The Legitimate State Interest to Attempt to Persuade Patients to Advance Fetal Life, Thus The In-Person Information Requirement Is Not A Substantial Obstacle**

A clinic or office visit with a qualified person on Guam to receive the State-mandated information does not, by itself, impose an unconstitutional burden on women. For one thing, it would merely entail driving to a clinic or office here on Guam to fulfill the requirement. At most this is an inconvenience but not tantamount to a substantial obstacle placed in the path of a woman seeking an abortion. The Supreme Court would agree.

> ### a.    Planned Parenthood v. Casey Undue Burden Standard

In *Planned Parenthood v. Casey*, 505 U.S. 833 (1992), the Supreme Court held: "A finding of an undue burden is a shorthand for the conclusion that a state regulation has the purpose or effect of placing a substantial obstacle in the path of a woman seeking an abortion of a nonviable fetus." *Casey*, 505 U.S. at 877.

The Court analyzed Pennsylvania's informed consent requirements, 24-hour waiting period, parental consent provision, and reporting and recordkeeping requirements and found they did not impose an undue burden 505 U.S. at 882-901; s*ee Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 539 (9th Cir. 2004) ("*Casey* largely dealt with a law aimed at promoting fetal life."). "In the context of a law purporting to promote fetal life, whatever obstacles that law places in the way of women seeking abortions logically serve the interest the law purports to promote—fetal life—because they will prevent some women from obtaining abortions." *Eden*, 379 F.3d at 540.

With respect to laws purporting to advance women's health, the Court said, "a provision of law is invalid, if its purpose or effect is to place a substantial obstacle in the path of a woman seeking an abortion before the fetus attains viability." *Casey*, 505 U.S. at 878. "As with any medical procedure, the State may enact regulations to further the health or safety of a woman seeking an abortion. Unnecessary health regulations that have the purpose or effect of presenting a substantial obstacle to a woman seeking an abortion impose an undue burden on the right." *Id*.

With respect to fetal life, the Court stated:

> Regulations which do no more than create a structural mechanism by which the State … may express profound respect for the life of the unborn are permitted, if they are not a substantial obstacle to the woman's exercise of the right to choose. [ ] Unless it has that effect on her right of choice, a state measure designed to persuade her to choose childbirth over abortion will be upheld if reasonably related to that goal.

*Casey*, 505 U.S. at 877-878 ("the means chosen by the State to further the interest in potential life must be calculated to inform the woman's free choice, not hinder it."); *Gonzales*, 550 U.S. at 157.

*Casey* makes clear that it is entirely constitutional for Guam to seek to ensure a woman's choice is informed, and to attempt to persuade her to choose an alternative to abortion, in order to advance the legitimate state interest in promoting fetal life. "To promote the State's profound interest in potential life, throughout pregnancy the State may take measures to ensure that the

11

woman's choice is informed, and measures designed to advance this interest will not be invalidated as long as their purpose is to *persuade* the woman to choose childbirth over abortion." 505 U.S. at 878 (emphasis added).

> [W]e permit a State to further its legitimate goal of protecting the life of the unborn by enacting legislation aimed at ensuring a decision that is mature and informed, even when in so doing the State expresses a preference for childbirth over abortion. In short, requiring that the woman be informed of the availability of information relating to fetal development and the assistance available should she decide to carry the pregnancy to full term is a reasonable measure to ensure an informed choice, one which might cause the woman to choose childbirth over abortion. This requirement cannot be considered a substantial obstacle to obtaining an abortion, and, it follows, there is no undue burden.

*Casey*, 505 U.S. at 883, 869 ("The woman's liberty is not so unlimited, however, that from the outset the State cannot show its concern for the life of the unborn…").

Guam's requirement that a physician or qualified person inform the patient in person is a concomitant aspect of ensuring informed and mature choice, and the Supreme Court assures that this does not impose a substantial obstacle to a woman's right to seek an abortion.

### b. The *Casey* Undue Burden Standard Remains Controlling Precedent

The U.S. Supreme Court has only recently reaffirmed its prior holdings that "a statute which, while furthering [a] valid state interest has the effect of placing a substantial obstacle in the path of a woman's choice cannot be considered a permissible means of serving its legitimate ends.' " *June Medical Services L.L.C. v. Russo*, 591 U.S. ___, ___, 140 S.Ct. 2103, 2120 (2020) (quoting *Whole Woman's Health v. Hellerstedt*, 579 U.S. ___, ___, 136 S. Ct. 2292 (2016); and *Casey*, 505 U.S. at 877 (plurality opinion)) (also reiterating the need to weigh benefits and burdens of seemingly "unnecessary health regulations").

The Court in *Casey* "recognized that the State has 'important and legitimate interests in … protecting the health of the pregnant woman and in protecting the potentiality of human life.' [ ] … To serve the latter interest, the State may, among other things, 'enact rules and regulations

designed to encourage her to know that there are philosophic and social arguments of great weight that can be brought to bear in favor of continuing the pregnancy to full term.' " *June Medical Services*, 591 U.S. at ___, 140 S.Ct. at 2135 (Roberts, C.J., concurring) (quoting *Casey*, 505 U.S. at 872). But the Court has never held, "that the undue burden standard requires courts 'to weigh the law's asserted benefits against the burdens it imposes on abortion access.' " *Id.*, 591 U.S. at ___, 140 S.Ct. at 1235. "Nothing about *Casey* suggested that a weighing of costs and benefits of an abortion regulation was a job for the courts." *Id.*, 591 U.S. at ___, 140 S.Ct. at 2136.[8]

### c. The Ninth Circuit Court of Appeals Abides By *Casey*

The Ninth Circuit Court of Appeals, acknowledging *Casey*'s holdings, declared it would "adhere to the approach in *Eden* and *Van Hollen*, "which requires us to weigh the extent of the burden against the strength of the state's justification in the context of each individual statute or

---

[8] Plaintiffs attempt to ignore *Marks v. United States*, 430 U.S. 188, 193 (1977) (establishing that, without a majority opinion, the Court's holding is embodied in the position expressed by the justice or justices "who concurred in the judgment[ ] on the narrowest grounds."). Plaintiffs instead look to *Cardenas v. United States* 826 F.3d 1164, 1171 (9th Cir. 2016)) to argue the Ninth Circuit maintains a different test than the U.S. Supreme Court in *Marks* to determine the effect of its own plurality opinions. (Pl. Mtn. at 23, n.13.) Even assuming the Ninth Circuit could dismiss the U.S. Supreme Court's test, plaintiffs' argument is simply incorrect. The Ninth Circuit overtly follows *Marks'* test and would adopt Chief Justice Roberts' concurring opinion in *June Medical Services*, because the "common denominator" between his opinion and the plurality's is the *Casey* undue burden standard (*i.e.*, laws not reasonably related to a legitimate state interest or that impose a substantial obstacle are unconstitutional), which is the " 'narrow test to which the plurality must necessarily agree as a logical consequence of its own, broader opinion'." *Cardenas*, 826 F.3d at 1171; *see EMW Women's Surgical Center, P.S.C. v. Friedlander*, 978 F.3d 418, 432-33 (6th Cir. 2020). The *June Medical* plurality's broader opinion is their addition to the undue burden standard "to weigh the law's asserted benefits against the burdens it imposes on abortion access." 140 S.Ct. 2103, 2135. The seeds of this misplaced balancing test originate in *Casey,* regarding abortion laws purporting to promote maternal health but that are "unnecessary health regulations" imposing an undue burden. (505 U.S. at 878), and the Court, in *Hellerstedt*, thus balances the actual medical benefits of purported health regulations against the burdens they impose to evaluate whether the health regulations are "unnecessary." 136 S.Ct. at 2298-99. Indeed, the very first line of *June Medical* states: "In [*Hellerstedt*], we held that 'unnecessary health regulations …" 140 S.Ct. at 2112. However, the case at bar does not involve a maternal health regulation but a law promoting fetal life, therefore this additional (medical benefits to burdens) balancing test does not apply anyway. *See Eden*, at 540.

regulation." *Planned Parenthood v. Humble*, 753 F.3d 905, 914 (9th Cir. 2014).[9] The court also rejected the Fifth and Sixth Circuits' approaches as "inconsistent with the undue burden test as articulated and applied in *Casey* and *Gonzales*." *Id*. The court found that the approach taken by the Fifth and Sixth Circuits "fails to recognize that the undue burden test is context-specific, and that both the severity of a burden and the strength of the state's justification can vary depending on the circumstances.." *Id*. (citation omitted).[10] Thus, the Ninth Circuit (via *Eden* and *Humble*) embrace the *Casey* undue burden/substantial obstacle test.

### 3. Guam's In-Person Information Requirement Is Not An Undue Burden On Women's Right To A Pre-Viability Abortion

Guam's in-person information requirement is reasonably related to Guam's legitimate state interest in promoting fetal life. "[A] State is permitted to enact *persuasive measures* which favor childbirth over abortion, even if those measures do not further a health interest." *Casey*, 505 U.S. at 886 (emphasis added). An in-person meeting for the purpose of receiving the State-mandated information may pose an inconvenience, it is not an undue burden. "[T]o constitute an undue burden, a challenged state regulation must have a strong likelihood of *preventing* women from obtaining abortions rather than merely making abortions more difficult to obtain." *Karlin v. Foust*, 188 F.3d 446, 482 (7th Cir. 1999) (original emphasis).

The requirement, that a physician or qualified person sit down with the patient in a private room and communicate the State-mandated information to the patient in person, helps ensure that the woman's important decisionmaking is better informed and exceedingly more considered than

---

[9] *Planned Parenthood v. Hollen*, 738 F.3d 786, 798 (7th Cir.2013), like *Eden*, involved laws purporting to promote women's health and safety ("the feebler the medical grounds, the likelier the burden, even if slight, to be 'undue' in the sense of disproportionate or gratuitous.").

[10] For this same reason, the Ninth Circuit is likely to reject the holding of the Sixth Circuit in *Bristol Regional Women's Center v. Slatery*, No. 20-6267, --- F.3d ---, 2021 WL 650893 (6th Cir. Feb. 19, 2021), because it, again, fails to consider the strength of the state's justification for the regulation which, for a law promoting fetal life, is self-evident. (*see Eden* at 540; *Humble* at 912).

14

if the information is communicated by remote means. It is designed to make the most impactful impression possible, and to set a pensive tone for the woman's deliberation over the next 24 hours before the procedure. The Supreme Court has already held that a 24-hour waiting period, as a method reasonably serving the State's legitimate concern for informed consent, is not an undue burden. Though the Court acknowledged that this requirement imposes *some* burden on women by making abortion more difficult and expensive to obtain, it was still not a *substantial* obstacle, even though it would be "particularly burdensome" to "those women who have the fewest financial resources … [and] who must travel long distances." *Casey*, at 886-87 (also rejecting that a 24-hour waiting period would be invalidated by its limitation on a physician's discretion). Several other courts have upheld similar 24-hour waiting periods in *Casey*'s wake.[11]

It is important to remember that the Supreme Court specifically found in *Casey* that there was no undue burden where the informed consent requirements and 24-hour waiting period would require two *in-person visits* to the physician. *Casey*, 505 U.S. at 885-87.[12] The in-person information requirement stands alongside the 24-hour waiting period as a reasonable exercise of the legitimate state interest to promote fetal life. Both are intended to cause the patient to undertake serious and solemn contemplation and reflection about a personal decision as profound as whether to terminate potential human life. For this reason, governments are permitted to require women to take extended time to think on it and to hear comprehensive information about the fetus, the

---

[11] *Karlin v. Foust*, 188 F.3d 446, 484-88 (7th Cir.1999); *Planned Parenthood v. Miller*, 63 F.3d 1452, 1467 (8th Cir.1995); *Fargo Women's Health Organization v. Schafer*, 18 F.3d 526, 533 (8th Cir. 1994); *Barnes v. Moore*, 970 F.2d 12, 15 (5th Cir. 1992); *Cincinnati Women's Servs., Inc. v. Taft*, 468 F.3d 361 (6th Cir.2006); *Utah Women's Clinic v. Leavitt*, 844 F.Supp. 1482 (D. Utah 1994), *rev'd in part on other grounds, dismissed in part*, 75 F.3d 564 (10th Cir. 1995); *but see Bristol Regional Women's Center v. Slatery*, No. 20-6267, --- F.3d ---, 2021 WL 650893 (6th Cir. Feb. 19, 2021).

[12] *See also Karlin v. Foust*, 188 F.3d 446, 484-88 (7th Cir. 1999); *Barnes v. Moore*, 970 F.2d 12, 15 (5th Cir. 1992); *Utah Women's Clinic,* 844 F.Supp. at 1492.

15

procedure (and its risks), and avenues for public assistance and child support, while in a private, personal conference with a health professional.

Requiring a woman who is considering an abortion to meet with a physician or qualified person in person to receive and internalize all the information necessary to make a deeply meaningful decision is not a substantial obstacle to her ability to obtain an abortion. "*Casey* thus makes clear that the substantial obstacle test is, as the name suggests, substantial. It requires more than State-sponsored informed consent and State-sponsored advocacy for childbirth. It requires more than delay and inconvenience." *Tucson Women's Center v. Arizona Medical Board*, 666 F.Supp.2d 1091, 1098 (D. Ariz. 2009).

### 4. The In-Person Information Requirement Is Reasonably Related To Guam's Legitimate Interest In Promoting Fetal Life

#### a. The In-Person Information Requirement Has A Rational Basis

Guam's in-person information requirement has a rational basis grounded in its purpose to foster the advancement of fetal life. "Laws that do not pose a substantial obstacle to abortion access are permissible, so long as they are 'reasonably related' to a legitimate state interest." *June Medical Services*, 140 S.Ct. at 2135 (Roberts, C.J., concurring) (citing *Casey*, 505 U.S. at 878 ("a state measure designed to persuade her to choose childbirth over abortion will be upheld if reasonably related to that goal")). It is not for a court to evaluate the efficacy, as applied, of a regulation purporting to promote fetal life, as a balancing test between the State interest and the burden to women therefrom, but merely to determine if the law has a rational basis for promoting fetal life. *See Id*., at 2137; *Casey*, 505 U.S. at 884-885 (finding requirement, that only a physician provide information to the patient, not an undue burden "even if an objective assessment might suggest" the law had little if any benefit); *see also Gonzales*, 550 U.S. at 158. Rather, this is a highly deferential standard, requiring only that a court find that the Legislature had "a rational basis to act." *Id*.

"[A] legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 315 (1993); *see Gonzales*, 550 U.S. at 160 (finding by "reasonable inference" that a law seeking to promote fetal life was necessarily effective in persuading women not to choose abortion). A court's factfinding responsibility "does not authorize it to resolve conflicts in the evidence against the legislature's conclusion or even to reject the legislative judgment on the basis that without convincing statistics in the record to support it, the legislative viewpoint constitutes nothing more than … 'pure speculation.' " *Vance v. Bradley*, 440 U.S. 93, 110-111 (1979) (citation omitted).

Plaintiffs admit that they could "delegate[] the responsibility of conveying the state-mandated information in person to a qualified provider in Guam," but complain that having to do so is "completely irrational and serves no medical purpose," and would burden their patients with "a completely unnecessary trip to a health care provider…." *Decl. of Bliss Kaneshiro, M.D.*, Complaint, Ex. 4, at ¶ 91; *Decl. of Shandhini Raidoo, M.D.*, Complaint, Ex. 5, at ¶ 87. But a "medical purpose" is not at issue with regard to the in-person information requirement, and an extra trip to a health care provider is not a substantial obstacle that may prevent a woman from obtaining an abortion. For that reason, plaintiffs' claims fail.

> **b. The In-Person Information Requirement Best Effectuates Guam's Legitimate Interest To Promote Fetal Life**

Though the woman has a right to choose to terminate or continue her pregnancy before viability, it does not at all follow that the State is prohibited from taking steps to ensure that this choice is *thoughtful* and *informed*." Casey, 505 U.S. 872 (emphasis added). "Even in the earliest stages of pregnancy, the State may enact rules and regulations designed to encourage her to know that there are philosophic and social arguments of great weight that can be brought to bear in favor of continuing the pregnancy to full term and that there are procedures and institutions to allow

17

adoption of unwanted children as well as a certain degree of state assistance if the mother chooses to raise the child herself." *Id.* "It follows that States are free to enact laws to provide a reasonable framework for a woman to make a decision that has such profound and lasting meaning." *Id.* 505U.S. at 873; *see*, *also*, *Gonzales*, 550 U.S. at 157 ("The government may use its voice and its regulatory authority to show its profound respect for the life within the woman.").

Regardless of what doctors are permitted to do in Hawaii or elsewhere, in Guam the Legislature has determined that, to ensure that a woman's choice regarding abortion is "thoughtful and informed," and has processed the inherent "philosophic and social arguments of great weight," there is no other proper setting for the woman to fully appreciate the information given regarding a decision with "such profound and lasting meaning" than when that information is conveyed in an in-person meeting, and questions are posed and answered in a private, personal setting. *See Casey*, 505 U.S. at 872-873. "Abortion is inherently different from other medical procedures, because no other procedure involves the purposeful termination of a potential life." *Harris v. McRae*, 448 U.S. 297, 325 (1980).

The Legislature has directed that only a direct, face-to-face meeting with the person providing information "material to the decision of whether or not to undergo the abortion" such as "the probable anatomical and physiological characteristics" of the fetus can best assure the woman will firmly understand the significance of the act of abortion and take the information to heart. (10 GCA § 3218.1(b)(1)(B).) "[T]hough the abortion decision may originate within the zone of conscience and belief, it is more than a philosophic exercise. Abortion is a unique act." *Casey*, 505 U.S. at 852. "The State has an interest in ensuring so grave a choice is well informed." *Gonzales*, 550 U.S. at 159. Accordingly, in order "to ensure that a woman *apprehend the full consequences of her decision*," there is no substitute for an in-person meeting for the provisioning of information crucial to her decision. *Casey*, 505 U.S. at 882; *see Tucson Woman's Clinic v. Eden*, 379 F.3d 531,

at 540. "The decision to abort, indeed, is an important, and often a stressful one, and it is desirable and imperative that it be made with full knowledge of its nature and consequences." *Planned Parenthood v. Danforth*, 428 U.S. 52, at 66.

"Whether to have an abortion requires a difficult and painful moral decision [thus] it seems unexceptionable to conclude some women come to regret their choice to abort the infant life they once created and sustained." *Gonzales v. Carhart*, 550 U.S. 159 (internal citation omitted). "For many women, the decision whether to have an abortion is a difficult one involving the consideration of weighty ethical, moral, financial, and other considerations." *McCormack v. Hiedeman*, 694 F.3d 1004, at 1016. "[W]e permit a State to further its legitimate goal of protecting the life of the unborn by enacting legislation aimed at ensuring a decision that is *mature and informed*, …. This requirement cannot be considered a substantial obstacle to obtaining an abortion…." *Casey*, 505 U.S. at 883 (emphasis added).

Plaintiffs' affiant, Mark D. Nichols, M.D., opines that "patient education and informed consent conversations [during live videoconferencing] occur just as they do in person," because, he says, he "share[s] the same information over live video-conference that [he] would during an in-person visit, and patients are given the opportunity to ask questions …." (*Decl. of Mark D. Nichols, M.D.*, Complaint, Ex. 2, at ¶ 51.) This may suit his preferences, but Dr. Nichols does not account for Guam's legislated interest. Particularly, Dr. Nichols fails to address the qualitative differences in personal communication between meeting someone up close and in the flesh, versus speaking to their reduced-size image on a video screen. Another affiant, Sierra Washington, M.D., also offers her conclusory opinion that video conferencing is a sufficient medium to provide information and obtain informed consent as compared to an in-person meeting, but fails to explain reasons for this opinion. *Decl. of Sierra Washington, M.D.*, Complaint, Ex. 3, at ¶¶ 93-95.

19

Whatever their preferences in their own practices may be, the Guam Legislature's intent is not simply to dump information on a patient in a cursory or perfunctory fashion. Several types of media are capable of imparting information, but they cannot convey the information with the same degree of profundity as does an in-person conversation.

> Courts have long recognized that 'eye-to-eye, face-to-face" interaction is superior to even videoconferencing. *See, e.g., State v. Vess*, 157 Ariz. 236, 238, 756 P.2d 333, 335 (App.1988) (use of closed-circuit testimony for child witness 'must be justified by necessity,' acknowledging that observing a person's demeanor enhances communication); *Maryland v. Craig*, 497 U.S. 836, 845-46, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990) (observation of a witness's demeanor helps ensure reliability of testimony); *accord Mattox v. United States*, 156 U.S. 237, 242-43, 15 S.Ct. 337, 39 L.Ed. 409 (1895).

*Planned Parenthood v. Arizona*, 227 Ariz. 262, 275 (Ariz. 2011).

State and local legislatures are constitutionally authorized to decide for themselves whether requiring that information be delivered in person, and answering questions in person, provides the best means for the government to reach the patient in subtle, yet crucial, ways unique to in-person, human interaction and interpersonal communication. Whether plaintiffs and their affiants agree or not, there is a distinct difference between counseling patients face-to-face rather than over a video feed. One need only ask any teacher currently yearning for a return to classroom instruction about the shortcomings of remote learning that inhibit their students' ability to learn constructively. No other method shares the same capability for impact upon the psyche as does hearing information from, and communicating with, another human being who is physically present with you.

### B. The Requirement That A Woman Contemplating An Abortion Be Given The Information Required By Law "Individually" In A "Private Room" Does Not Preclude Her From Defining The Scope Of Her Privacy Right

Next, plaintiffs challenge 10 GCA § 3218.1(b)(4) which provides in its entirety:

> (4) The information in Subsections (b)(l), (b)(2) and (b)(3) of this § 3218.1 is provided to the woman individually and in a private room to protect her privacy

20

and maintain the confidentiality of her decision and to ensure that the information focuses on her individual circumstances and that she has an adequate opportunity to ask questions.

Plaintiff's argue they should be permitted to do this by videoconferencing instead of "individually and in a private [physical] room." But the courts have upheld the government's right to fully engage the patient's attention, such as by meeting with them in person, individually and in a private room, to communicate truthful, nonmisleading information to persuade them to seek a safe and legal alternative to abortion. *See Casey*, 505 U.S. at 885-87; *Karlin v. Foust*, 188 F.3d at 484-48; *Barnes v. Moore*, 970 F.2d 12, 15 (5th Cir.1992).

At pages 30-31 of their motion plaintiffs misconstrue § 3218.1(b)(4) to argue that it prevents women who are contemplating having an abortion from bringing whomever they wish with them while they receive the information. The section's stated purpose is "to protect *her* privacy and maintain the confidentiality of *her* decision….," which the law accomplishes by creating boundaries addressed to *provider* behavior to ensure the *provider* respects and ensures the patient's privacy. 10 GCA § 3218.1(b)(4) (emphasis added). The requirement that the woman be informed "individually" and in a "private room" are "calculated to inform the women's free choice, not hinder it," because they give control of the patient's privacy right to the patient herself. *Casey*, 505 US at 877. She is not precluded from bringing whomever she wants (presumably a trusted friend or relative) into the room with her, because she holds the power to expand the zone of her informational privacy right to include, and allow disclosure to, whomever she chooses.[13]

---

[13] For example, the privacy provision in the Health Insurance Portability and Accountability Act ("HIPAA"), the obligate the provider to protect the patient's confidential medical information, but the patient can consent to waiving some of her protections. 45 CFR § 164.506(b). "The key component in analyzing HIPAA's [permissive disclosure requirements] is the ability of the patient to withhold permission and to effectively block disclosure … [so as to] give each patient more control over the dissemination of their medical records." *Law v. Zukerman*, 307 F. Supp. 2d 705, 710–11 (D. Md. 2004). Similarly, the established privacy right holder can consent to the disclosure of otherwise protected information because

21

Section 3218.1(b)(4) ensures women's interest in the opportunity to make a fully informed and ultimately private decision. This interest includes preserving a woman's ability to include whomever she chooses to accompany her when she receives necessary information to make such a significant and highly personal decision, upon which § 3218.1(b)(4) does nothing to impinge, explicitly or tacitly.

## II. PLAINTIFFS WILL NOT SUFFER IRREPARABLE HARM IF PRELIMINARY INJUNCTION IS DENIED

Plaintiffs appear to argue that merely alleging a violation of constitutional rights automatically entitles them to preliminary injunctive relief, as if it irreparable injury is presumed from a showing of likelihood of success on the merits, which plaintiffs have not done. At page 32-33, they assert, "Because the challenged statutes violate the due process rights of Plaintiffs and their patients, this alone is sufficient to constitute irreparable harm." They must still, however, demonstrate a likelihood of success on the merits, which they have failed to do. A "favorable presumption of irreparable harm arises only *after* a plaintiff has shown a likelihood of success on the merits of the constitutional claim." *Page v. Cuomo*, 478 F.Supp.3d 355, 364 (N.D. N.Y. 2020) (original emphasis); *see Turley v. Giuliani*, 86 F.Supp.2d 291, 295 (S.D. N.Y. 2000) ("in order to show irreparable injury, plaintiff must show a likelihood of success on the merits").

Plaintiffs must still make a preliminary showing of irreparable injury. They argue the law they challenge "block[s] pre-viability abortion in Guam [and] force[s] people seeking abortion in Guam to travel several thousands of miles for a safe and legal abortion." but the fact that plaintiffs are unwilling or unable to either come to Guam or to associate other qualified persons to meet with prospective patients to satisfy the in-person requirement of § 3218.1 does not "force" anyone to

---

she is the arbiter of the scope of her own zone of privacy. *See U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 763 (1989) ("both the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person.")

do anything. That argument suggests plaintiffs can do anything anywhere by telemedicine so long as they are licensed in the jurisdiction where the patient is. The Ninth Circuit and Supreme Court have never agreed with that.

As explained, plaintiffs are not likely to prevail on the merits of their allegations. The only thing "blocking pre-viability abortion in Guam" (Pl. Mtn. at 32), is plaintiffs' unwillingness to comply with the requirements of a law that the Supreme Court has held legislatures are constitutionally authorized to enact.

Plaintiffs have failed to demonstrate sufficient cause to issue preliminary injunction. "[I]it is an abuse of discretion for a district judge to issue a pre-enforcement injunction while the effects of the law (and reasons for those effects) are open to debate." *A Woman's Choice-East Side Women's Clinic v. Newman*, 305 F.684, 693 (7th Cir. 2002). Further, "any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (quoting *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers)). "[T]his Court … presumes that [a state] statute will be construed in such a way as to avoid the constitutional question presented. *Baggett v. Bullitt*, 377 U.S. 360, 375 (1964).

## III. THE BALANCE OF EQUITIES TIPS TOWARD DEFENDANTS AND PRELIMINARY INJUNCTION WOULD INJURE THE PUBLIC INTEREST[14]

The harm that plaintiffs will experience if the Court denies a temporary injunction must be balanced against the harm that the people of Guam would suffer if the Court grants temporary injunction. *See Winter*, 555 U.S. 7, 24 ("courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief" and

---

[14] When the Government is a party to a case, the two factors of the balance of the equities and the public interest merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

23

"should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.") (citation and internal quotation marks omitted).

Plaintiffs' claims of a "harm" are less than dubious. The law they challenge has remained unchallenged for 9 years since its passage until now, and it has proven not to have caused any notable decrease in reported abortions on Guam. "The passage of time gives rise to a strong presumption of constitutionality." *American Legion v. American Humanist Ass'n*, 139 S.Ct. 2067, 2085 (2019). On the other hand, if the Court enjoins the enforcement of 10 GCA § 3218.1, then none of its informed consent and 24-hour waiting period provisions would be available, not only to carry out legislated state interests, but to adequately inform women of all important consequences and aspects essential to a momentous decision, thus harming their rights to fully informed consent before undergoing a personally significant medical procedure.

"Generally speaking, 'the public interest is served by preventing the violation of constitutional rights.' " *League of Women Voters v. Hargett*, 400 F.Supp.3d 706, 733-734 (M.D. Tenn. 2019) (quoting *Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 436 (6th Cir. 2004)). "Nevertheless, enjoining public officials from pursuing their chosen policies is not without costs. The court, therefore, must consider whether any harm to the public interest associated with enjoining the [government action] would outweigh the benefit." *Id.*, at 734.

"[T]he purpose of a preliminary injunction is to preserve the status quo between the parties pending a resolution of a case on the merits." *McCormack v. Hiedeman*, 694 F.3d at 1019. The plaintiffs here do not seek to preserve the pre-existing status quo pending a determination on the merits, they seek to *change* the status quo in order to expand their medical practices from Hawaii to Guam to offer medication abortion via telemedicine (which is not unlawful), without having to comply with the in-person informed consent provisions of the law. There is no urgency to granting

24

preliminary relief in this case, and plaintiffs' claimed urgency is not due to any new development in the law.

This is especially relevant here because plaintiffs do not seek a prohibitory injunction to *maintain* the status quo *ante*, they seek a mandatory injunction to *alter* the status quo to require the government of Guam to shun a law that has been faithfully observed without objection since 2012, and not because the law imposes any prohibition on access to abortion. Wisdom dictates that plaintiffs' motion be denied.

## CONCLUSION

Defendants respectfully submit that the Court should deny plaintiffs' motion for preliminary injunction and see that they take nothing therefrom. Defendants additionally request the Court grant Defendants any other relief in equity or law that the Court deems appropriate.

Dated this 5th day of March, 2021.

**OFFICE OF THE ATTORNEY GENERAL**
**Leevin Taitano Camacho**, Attorney General


By: _____/s/_____
JAMES L. CANTO II
Deputy Attorney General

25

**CERTIFICATE OF SERVICE**

I declare under penalty of perjury under the laws of Guam that, on this day, I caused the foregoing document to be served on all counsel by filing it electronically with the Clerk of Court for the United States District Court of Guam using the CM/ECF system.

Executed at Tamuning, Guam, on March 5, 2021.

  /s/\
JAMES L. CANTO II\
Deputy Attorney General