VANESSA L. WILLIAMS, ESQ.
LAW OFFICE OF VANESSA L. WILLIAMS, P.C.
414 WEST SOLEDAD AVENUE
GCIC BLDG., SUITE 500
HAGÅTÑA, GUAM 96910
TELEPHONE: (671) 477-1389
EMAIL: vlw@vlwilliamslaw.com

ALEXA KOLBI-MOLINAS*
MEAGAN BURROWS*
RACHEL REEVES*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 BROAD STREET, 18TH FLOOR
NEW YORK, NY 10004
TEL: (212) 549-2633
EMAIL: akolbi-molinas@aclu.org

* ADMITTED PRO HAC VICE

Attorneys for Plaintiffs

**IN THE DISTRICT COURT OF GUAM**

| | |
|---|---|
| SHANDHINI RAIDOO, *et al.*, | ) |
| | ) CIVIL CASE NO. 21-00009 |
| Plaintiffs, | ) |
| | ) |
| vs. | ) **REPLY IN SUPPORT OF PLAINTIFFS'** |
| | ) **MOTION FOR A PRELIMINARY** |
| LEEVIN TAITANO CAMACHO, *et al.*, | ) **INJUNCTION** |
| | ) |
| Defendants. | ) |
| | ) |

## <u>Table of Contents</u>

**TABLE OF AUTHORITIES** ................................................................................................ ii

**INTRODUCTION** ............................................................................................................... 1

I.      PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THE
CHALLENGE TO SECTION 3218.1 ...................................................................... 3

    A.    Defendants Misstate the Applicable Constitutional Standard.......................... 3

    B.    The In-Person Requirement is Unconstitutional As Applied........................... 8

        1.    As Applied, Prohibiting Plaintiffs from Providing the Mandated Information to Their
Patients Provides No Benefit. ....................................................................... 8

        2.    The Burdens Imposed by the In-Person Requirement Outweigh Its Non-Existent
Benefits ....................................................................................................... 14

    C.    This Court Should Construe the Individual, Private Room Requirement as Waivable By
the Patient...................................................................................................... 18

II.      PLAINTIFFS SATISFY THE REMAINING PRELIMINARY INJUNCTION
FACTORS............................................................................................................ 19

**CONCLUSION** ................................................................................................................ 20

# Table of Authorities

**Cases**

*A Woman's Choice v. Newman,*

    305 F.3d 684 (7th Cir. 2002) ......................................................................................... 19

*Barnes v. Moore,*

    970 F.2d 12 (5th Cir. 1992) ............................................................................................ 10

*Cardenas v. United States,*

    826 F.3d 1164 (9th Cir. 2016) .......................................................................................... 6

*Cincinnatti Women's Servs. Inc, v. Taft,*

    468 F.3d 361 (6th Cir. 2006) .......................................................................................... 10

*Doe v. Bolton,*

    410 U.S. 179 (1973) ........................................................................................................ 12

*EMW Women's Surgical Ctr., P.S.C. v. Friedlander,*

    960 F.3d 785 (6th Cir. 2020) ............................................................................................ 5

*EMW Women's Surgical Center, P.S.C. v. Friedlander,*

    978 F.3d 418 (6th Cir. 2020) ............................................................................................ 7

*Fargo Women's Health Org. v Schafer,*

    18 F.3d 526 (8th Cir. 1994) ............................................................................................ 10

*Gonzales v. Carhart,*

    550 U.S. 124 (2007) .......................................................................................................... 3

*Gordon v. U.S. Bank National Association,*

    2017 WL 6551144 (C.D. Cal. 2017) .............................................................................. 19

*Hernandez v. Sessions,*

    872 F.3d 976 (9th Cir. 2017) .......................................................................................... 19

*June Medical Services, L.L.C. v. Russo,*

    140 S. Ct. 2103 (2020) .............................................................................................. 6, 15

*Karlin v. Foust,*

    188 F.3d 446 (7th Cir. 1999) .......................................................................................... 10

*Lebron v. Sec't of Fla. Dep't of Children & Families,*

    772 F.3d 1352 (2014) .................................................................................................. 13

*Marks v. United States,*

    430 U.S. 188 (1977) ...................................................................................................... 6

*McCormack v. Hiedman,*

    694 F.3d 1004 (9th Cir. 2012). ........................................................................... 14, 19

*McLelland v. Astrue,*

    2010 WL 3632731 (C.D. Cal. Sept. 13, 2010). ....................................................... 13

*Melendres v. Arpaio,*

    695 F.3d 990 (9th Cir. 2012) ................................................................................... 20

*Monroe v. Zimmer U.S. Inc.,*

    766 F. Supp. 2d 1012 (E.D. Cal. 2011) .................................................................. 11

*Planned Parenthood Ariz., Inc. v. Humble,*

    753 F.3d 905 (9th Cir. 2014) ............................................................................. passim

*Planned Parenthood Ariz., Inc. v. Amer. Assoc. of Pro-Life Obstetricians & Gynecologists,* 227

    Ariz. 262 (Ariz. Ct. App. 2011) .............................................................................. 13

*Planned Parenthood Minn., N.D., S.D. v. Daugaard,*

    799 F. Supp. 2d 1048 (D.S.D. 2011) ...................................................................... 16

*Planned Parenthood of Ind. & Ky. v. Comm'r of Ind. State Dep't of Health,*

    896 F.3d 809 (7th Cir. 2018) ..................................................................................... 5

*Planned Parenthood of Indiana & Kentucky v. Adams,*

    937 F.3d 973 (7th Cir. 2019) ................................................................................... 19

*Planned Parenthood of Se. Pa. v. Casey,*

    505 U.S. 833 (1992) ............................................................................................. passim

*Planned Parenthood Se. v. Strange,*

    33 F. Supp. 3d 1330 (M.D. Ala. 2014) ............................................................. 12, 16

*Planned Parenthood of Se. Pa. v. Casey,*

    947 F.2d 682 (3d Cir. 1991) .................................................................................... 10

*Planned Parenthood of Cent. Mo. v. Danforth*,

   428 U.S. 52 (1976) ................................................................................................ 10

*Planned Parenthood Sioux Falls Clinic v. Miller*,

   63 F.3d 1452 (8th Cir. 1995) ............................................................................... 10

*Rodriguez v. Robbins*,

   715 F.3d 1127 (9th Cir. 2013) ............................................................................. 20

*State v. Vess*,

   157 Ariz. 236 (Ct. App. 1988) ............................................................................. 14

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,

   802 F. Supp. 2d 1125 (C.D. Cal. 2011) ............................................................... 19

*Todd v. Stryker Corp.*,

   2012 WL 2922727 (E.D. Cal. May 1, 2012) ........................................................ 11

*Tucson Woman's Clinic v. Eden*,

   379 F.3d 531, 540 (9th Cir. 2004) ................................................................. passim

*United States v. Weiss*,

   847 F. Supp. 819 (D. Nev. 1994) ........................................................................ 11

*United States v. Davis*,

   825 F.3d 1014 (9th Cir. 2016) ............................................................................ 6, 7

*Utah Women's Center v. Leavitt*,

   844 F. Supp. 1482 (D. Utah 1994) ...................................................................... 10

*W. Ala. Women's Center v. Williamson*,

   900 F.3d 1310 (11th Cir. 2018) ............................................................................. 5

*W. Ala. Women's Ctr. v. Williamson*,

   120 F. Supp. 3d 1296 (M.D. Ala. 2015) .............................................................. 16

*Whole Woman's Health v. Hellerstedt*,

   136 S. Ct. 2292 (2016) ................................................................................... passim

**Statutes**

10 G.C.A. § 3218.1 ...................................................................................... 2, 4, 9

**Other Authorities**

Jasmine Stole Weiss, *Attorney: Law change would void abortion lawsuit*,

Pacific Daily News (Feb. 3. 2021)............................................................................................ 8

# INTRODUCTION[1]

Rather than contend with the actual record and claims in this case, Defendants spend nearly their entire brief setting up and attacking legal and factual strawmen that have nothing to do with the sole remaining question before this Court: Whether 10 G.C.A. § 3218.1's ("Section 3218.1") in-person and individual, private room requirements are unconstitutional as applied in this context. *See* Order (ECF No. 27) (dismissing challenge to 9 G.C.A. § 31.20).

Contrary to what Defendants argue, Opp. 4–10, 22–23, Plaintiffs have never contended that Section 3218.1 prohibits medication abortion or the use of telemedicine to prescribe medication abortion, or that it has forced patients to travel off-island to obtain an abortion, *see* PI Br. 27–30. Nor are they required to do so to raise an as applied undue burden challenge. *See Planned Parenthood Ariz., Inc. v. Humble*, 753 F.3d 905, 917 (9th Cir. 2014) ("Neither the Supreme Court nor [the Ninth Circuit] has ever held that a burden must be absolute to be undue."); *see also* PI Br. 22. Moreover, this is not some broad-based attack on the very existence of Guam's mandated abortion information law, or even a facial challenge at all. No one is contesting that Guam can require certain information be provided to patients seeking abortion—including "persuasive" information or information expressing the government's preference for childbirth over abortion—or challenging the content of the specific information provided here. Indeed, Plaintiffs are merely trying to obtain the ability to provide this information to their patients themselves. Nor does this lawsuit allege it is unconstitutional to impose a 24-hour delay between when the patient receives the mandated information and the abortion itself. If granted the relief they seek, Plaintiffs would still be required to provide the mandated information at least 24 hours prior to the abortion.

These are the facts: Plaintiffs are physicians with decades of combined experience providing medical care to pregnant patients, whether those patients are continuing their

---

[1] Unless otherwise indicated, all emphases are added, and all internal citations and quotations omitted.

pregnancies through to childbirth or seeking abortion. Kaneshiro ¶¶ 1–5; Raidoo ¶¶ 1–4. Plaintiffs are thus extremely qualified to provide patients seeking abortion with "medically accurate information that a reasonable person would consider material to the decision of whether or not to undergo the abortion," as required under Section 3218.1, *i.e.*, "a description of the proposed abortion method," "the immediate and long-term medical risks associated with the proposed abortion method . . . and any potential effect upon future capability to conceive as well as to sustain a pregnancy to full term," "the probable gestational age of the unborn child," "the probable anatomical and physiological characteristics of the unborn child," "the medical risks associated with carrying the child to term," and "any need for anti-RH immune globulin therapy." 10 G.C.A. § 3218.1(b)(1)(B). Plaintiffs seek the ability to provide this and other mandatory information to their abortion patients and answer their questions in real-time, using face-to-face videoconference technology, at least 24 hours before the abortion, rather than to delegate the responsibility for doing so to a different health care provider in Guam. Raidoo ¶¶ 85–87, 89; Kaneshiro ¶¶ 89–91, 93. Notably, under Section 3218.1, this other health care provider need not have any training to provide abortion or medical care to pregnant patients at all; this provider could be a psychologist, licensed professional counselor, or licensed social worker. 10 G.C.A. § 3218.1(a)(13). This means that, as applied to these facts, Section 3218.1 prevents highly qualified physicians who will actually provide the abortion from providing this "material" information to their own patients, in favor of people with no relevant training or experience.

Plaintiffs are not aware of a single constitutional challenge to a mandated abortion information law, nor have Defendants cited any, that has considered—let alone upheld—a law that bars physicians who perform abortions from satisfying an informed consent requirement by providing information directly to their own patients. Even *Planned Parenthood Se. Pa. v. Casey*— the sole Supreme Court case upholding a mandatory abortion information law—concerned a

*Raidoo v. Camacho;* Civil Case No. 21-00009
Reply in Support of Plaintiffs' Motion for a Preliminary Injunction                                        Page **2** of **20**

Case 1:21-cv-00009   Document 30   Filed 03/13/21   Page 8 of 26

challenge by physicians to a law that prohibited them from delegating the provision of certain information to other health care providers who were already trained to do so, not the other way around. 505 U.S. 833, 884–85 (1992). Likewise, neither the Supreme Court nor the Ninth Circuit has ever considered, let alone upheld, a mandated abortion information law that imposes an in-person requirement. The law in *Casey* imposed no such requirement, requiring only that the information be provided "orally." *See* 505 U.S. at 902 (citing 18 Pa. Const. Stat. § 3205).

As set forth below, when the actual legal and factual issues before this Court are laid bare, it is clear that Plaintiffs are entitled to the limited preliminary injunctive relief they seek.

## I. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THE CHALLENGE TO SECTION 3218.1

### A. Defendants Misstate the Applicable Constitutional Standard

As Plaintiffs have explained, "[a]n undue burden exists, and therefore a provision of law is invalid, if its purpose or effect is to place a substantial obstacle in the path of a woman seeking an abortion before [viability]." *Casey*, 505 U.S. at 878; *see also* PI Br. 21–24. Under that standard three guiding principles are clear. *First,* a court must weigh the asserted benefits of a law against the burdens it imposes. *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2310 (2016). "The feebler the medical grounds, the likelier the burden, even if slight, is to be undue." *Humble*, 753 F.3d at 914. *Second,* a court must also consider "the ways in which [an] abortion regulation interacts with women's lived experience, socioeconomic factors, and other abortion regulations." *Id. Third,* when "weigh[ing] the asserted benefits against the burdens," a court must give "significant weight to evidence in the judicial record," *Hellerstedt*, 136 S. Ct. at 2310, and "retains an independent constitutional duty to review factual findings where constitutional rights are at stake," *Gonzales v. Carhart*, 550 U.S. 124, 165 (2007).[2] This means that, as in other areas of

---

[2] As this language makes clear, the Supreme Court has squarely rejected that the Guam Legislature's "choice," Opp. 17, to impose the in-person requirement is immune from judicial review. *See also Hellerstedt*, 136 S. Ct. at 2310 (holding "uncritical deference" to legislature "inappropriate" in abortion cases) (quoting *Gonzales*,

constitutional law, a court should consider the degree to which evidence shows an abortion restriction is over- or under-inclusive. *See, e.g.*, *Hellerstedt*, 136 S. Ct. at 2315 (discussing over- and under-inclusiveness of abortion clinic facility standards).

Defendants concede, as they must, that the Ninth Circuit "requires [this Court] to weigh the extent of the burden against the strength of the state's justification in the context of each individual statute or regulation" and recognizes that "the undue burden test is context-specific and that both the severity of a burden and the strength of the state's justification can vary depending on the circumstances." Opp. 13–14 (quoting *Humble*, 753 F.3d at 914).[3] However, to the extent Defendants contend this test does not apply where the government asserts an interest in protecting fetal life, only where the asserted interest is protecting patient health, Defendants are incorrect. Opp. 13 n.8. As an initial matter, this argument misunderstands the dual stated purpose of mandatory abortion information laws to protect patient health, *see Casey*, 505 U.S. at 882, as well as fetal life, *id.* at 883. Indeed, the Ninth Circuit decision in *Tucson Women's Ctr. v. Eden*, on which Defendants rely heavily, *see, e.g.*, Opp. 13–14, n.8, n.10, expressly considered the mandatory abortion information law in *Casey* as a law intended to promote the state's interest in patient health, and used *Casey's* analysis of that law to illustrate how a court must examine not only the burdens a law imposes, but also the extent to which it actually benefits a legitimate state

550 U.S. at 166). As *Casey* explained, the Court has "*required* judicial assessment of state laws affecting the exercise of the choice guaranteed against government infringement" and recognized that such "*required* determinations fall within judicial competence." 505 U.S. at 855. In any event, the only legislative findings Defendants can point to here concern the *content* of the information provided, not the value of or justification for the in-person requirement, particularly in these circumstances where requiring the information be provided in person means that it cannot be provided by the physician who is providing the abortion. Opp. 18 (quoting 10 G.C.A. § 3218.1(b)(1)(B)).

[3] Defendants appear to contradict themselves by also asserting that "the [Supreme] Court has never held" that the undue burden test requires courts to weigh a law's asserted benefits against its burdens. Opp. 13. But even if it were true that the Supreme Court had been silent on this point (which clearly it was not, *see Hellerstedt*, 136 S. Ct. at 2309) the Ninth Circuit expressly adopted such a test in *Humble*—as Defendants themselves are forced to admit, Opp. 13–14. Thus, either way, the balancing test controls this Court.

*Raidoo v. Camacho*; Civil Case No. 21-00009
Reply in Support of Plaintiffs' Motion for a Preliminary Injunction                                                    Page **4** of 20

Case 1:21-cv-00009   Document 30   Filed 03/13/21   Page 10 of 26

interest. 379 F.3d 531, 540 (9th Cir. 2004). Thus, even if the balancing test applied only to laws intended to protect patient health, this would be such a case.[4]

More fundamentally, however, the Supreme Court has never so much as suggested that "the standard for evaluating abortion regulations differs depending on the State's asserted interest or that there are even two different tests." *Planned Parenthood of Ind. & Ky. v. Comm'r of Ind. State Dep't of Health*, 896 F.3d 809, 817 (7th Cir. 2018), *vacated on other grounds sub nom. Box v. Planned Parenthood of Indiana & Kentucky, Inc.*, 141 S. Ct. 184 (2020). To the contrary, in clarifying the contours of the undue burden standard in *Hellerstedt*, which concerned regulations that purported to protect patient health, the Court relied on portions of *Casey* and *Gonzales* addressing regulations protecting fetal life, demonstrating that the test is the same regardless of the asserted state interest. *Hellerstedt*, 136 S. Ct. at 2309–10. Every court to address this argument has agreed, holding there is "no support for the proposition that a different version of the undue burden test applies" depending on the asserted state interest. *W. Ala. Women's Center v. Williamson*, 900 F.3d 1310, 1326 (11th Cir. 2018); *see also EMW Women's Surgical Ctr., P.S.C. v. Friedlander*, 960 F.3d 785, 795 (6th Cir. 2020), *reh'g en banc dismissed*, 831 F. App'x 748 (6th Cir. 2020); *Planned Parenthood of Ind. & Ky.*, 896 F.3d at 817.

To the extent Defendants also argue that the appropriate standard here is rational basis review, Opp. 16, that argument has also been rejected by both the Supreme Court and the Ninth Circuit. In *Hellerstedt*, the Supreme Court reversed the Fifth Circuit decision below *because* that court was "wrong to equate the judicial review applicable to the regulation of a constitutionally protected personal liberty with the less strict review applicable where, for example, economic legislation is at issue." 136 S. Ct. at 2309. The Ninth Circuit, too, has expressly held that *Casey* rejected rational basis review in favor of a higher standard. *See, e.g.*, *Humble*, 753 F.3d at 913.

---

[4] For much the same reason, Defendants are wrong to rely on *Eden* to suggest that the "strength of the state's justification" for a mandatory abortion information law is "self-evident." Opp. 14. *Eden's* holding with respect to these specific laws is the exact opposite.

*Raidoo v. Camacho;* Civil Case No. 21-00009
Reply in Support of Plaintiffs' Motion for a Preliminary Injunction          Page **5** of **20**

Case 1:21-cv-00009   Document 30   Filed 03/13/21   Page 11 of 26

Finally, the Supreme Court's fractured opinion in *June Medical Services, L.L.C. v. Russo*, 140 S. Ct. 2103 (2020) ("*JMS*"), does not change anything for this Court. In *JMS*, the plurality and the concurrence agreed to strike down the Louisiana law at issue as unconstitutional. 140 S. Ct. at 2125–32, 2133 (plurality); *id.* at 2134, 2141–42 (Roberts, C.J., concurring). The plurality and concurrence also agreed that *Hellerstedt* remains the law of the land. *Id.* at 2112–20, 2133 (plurality); *id.* at 2133, 2141–42 (Roberts, C.J., concurring). However, while the four justices in the plurality reaffirmed and applied the undue burden test as set forth in *Hellerstedt*—balancing the challenged law's benefits against its burdens—the Chief Justice, alone in his concurrence, would have applied the undue burden test differently. Under the Chief Justice's two-part test, a law regulating abortion is unconstitutional if it is not reasonably related to a legitimate state interest *or* if it imposes a substantial obstacle in the path of a person seeking an abortion. *Compare JMS*, 140 S. Ct. at 2120 (plurality), *with id.* at 2138 (Roberts, C.J., concurring).

In *Marks v. United States*, the Supreme Court provided that "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." 430 U.S. 188, 193 (1977). The Ninth Circuit has held that, under *Marks*, a concurrence is only controlling when it "posits a narrow test to which the plurality *must necessarily agree* as a logical consequence of its own, broader position." *Cardenas v. United States*, 826 F.3d 1164, 1171 (9th Cir. 2016). To "foster clarity" in the Circuit's "approach to applying *Marks*," the *en banc* Ninth Circuit has further explained that "[a] fractured Supreme Court decision should only bind the federal courts of appeal when a majority of the Justices agree upon a single underlying rationale and one opinion can reasonably be described as a logical subset of the other. When no single rationale commands a majority of the Court, only the specific result is binding on lower federal courts." *United States v. Davis*, 825 F.3d 1014,

*Raidoo v. Camacho;* Civil Case No. 21-00009
Reply in Support of Plaintiffs' Motion for a Preliminary Injunction                    Page **6** of **20**

Case 1:21-cv-00009   Document 30   Filed 03/13/21   Page 12 of 26

1021–22 (9th Cir. 2016). This means that where, as in *JMS*, the majority agreed on the holding—striking the Louisiana law under *Hellerstedt*—but not on the rationale, such a fractured opinion announces no new test. Because *Hellerstedt* remains good law, so does the balancing test it applied.[5]

As such, Defendants' argument that Chief Justice Roberts's concurrence controls under *Marks* and Ninth Circuit precedent, *see* Opp. 13 n.8, is flatly contradicted by the law itself. Indeed, the only support Defendants appear to muster for this position is the Sixth Circuit's recent decision in *EMW Women's Surgical Center, P.S.C. v. Friedlander*, but the Sixth Circuit has adopted a "results" based approach to *Marks* that the Ninth Circuit expressly rejected in *Davis*. *Compare* 978 F.3d 418, 431–32 (6th Cir. 2020) (holding "we are to look to the results that the rationales of the concurring opinions will produce when applied in future cases" and applying to opinion in *JMS*), and *Davis*, 825 F.3d at 1020–22 (explaining "two main approaches [to *Marks*] have emerged: one focusing on the reasoning of the various opinions and the other on the ultimate results . . . To foster clarity, we explicitly adopt the reasoning-based approach to applying *Marks*.").[6]

For the reasons set forth below, applying the proper test under binding Supreme Court and Ninth Circuit case law, Plaintiffs have more than demonstrated a substantial likelihood of success on the merits of their as applied claim. However, as also set forth below, even if the Chief Justice's test applied, Plaintiffs would still prevail.

---

[5] Put another way, *JMS* neither expressly affirmed nor overturned the balancing test—it merely leaves the status quo unchanged. For purposes of this Court, as noted in n.3 *supra*, that status quo is dictated not only by *Hellerstedt*, but also by *Humble*, and leaves no doubt that the balancing test governs.

[6] Nor are Defendants correct if they are trying to argue that the "common denominator" between the plurality and concurrence in *JMS* is that they both applied *Casey's* undue burden test, Opp. 13 n.8, because the entire impetus for the plurality and concurrence to write separate opinions is the lack of agreement on what *Casey's* undue burden actually requires. Again, to hold the Chief Justice's opinion controlling under these circumstances would run contrary to the Ninth Circuit's objective of ensuring that a Supreme Court decision is only binding "when a majority of the Justices agree upon a *single underlying rationale*." *Davis*, 825 F.3d at 1021–22.

*Raidoo v. Camacho;* Civil Case No. 21-00009
Reply in Support of Plaintiffs' Motion for a Preliminary Injunction                                    Page **7** of **20**

Case 1:21-cv-00009   Document 30   Filed 03/13/21   Page 13 of 26

**B. The In-Person Requirement is Unconstitutional As Applied.**

1. As Applied, Prohibiting Plaintiffs from Providing the Mandated Information to Their Patients Provides No Benefit.

Under the circumstances of this case, preventing Plaintiffs from satisfying Section 3218.1 using a live, face-to-face videoconference serves no benefit and likewise would not be reasonably related to a legitimate government interest. PI Br. 7–12, 27–30. Indeed, Defendants cannot even show that the requirement could pass rational basis review in this context. *See Eden*, 379 F.3d at 540 (holding undue burden standard not triggered where regulation fails to rationally promote a legitimate interest). Defendants have thus failed to rebut Plaintiffs' showing under either test.

Because there are no physicians who provide abortions in Guam, patients have no option but to obtain medication abortion care from a physician off-island who uses telemedicine. PI Br. 13–16.[7] Thus, in practice, Section 3218.1's in-person requirement prevents all abortion patients in Guam from receiving mandated pre-abortion information from the physician who will provide their abortion—the person who is also most qualified to ensure that the patient fully understands the information provided. Although Defendants allege that the lack of abortion providers in Guam is the result of "market forces," and is therefore factually and legally irrelevant, this is just another strawman. Opp. 7–10. This lawsuit does not blame Defendants, or Section 3218.1, for the lack of abortion providers in Guam. Nor does this lawsuit seek to impose any affirmative obligation on Defendants to rectify that problem. But neither the Constitution nor binding precedent permit this Court to ignore the real-world context in which Section 3218.1 is being applied. *See supra* p. 3; *see also Casey*, 505 U.S. at 887–99 (recognizing that spousal notice requirement would uniquely impact abortion patients experiencing domestic violence and facially striking requirement on that

---

[7] Defendants have introduced no evidence that abortions are being legally performed by clinicians located in Guam. After this lawsuit was filed, the Guam Department of Public Health and Social Services confirmed that no abortions were reported in 2020. *See* Jasmine Stole Weiss, *Attorney: Law change would void abortion lawsuit*, Pacific Daily News (Feb. 3, 2021), https://www.guampdn.com/story/news/local/2021/02/02/attorney-telemedicine-medication-abortion-law-change-void-aclu-lawsuit/4348330001/.

basis alone, even though state was not responsible for abusive relationships). Defendants simply cannot escape the fact that Section 3218.1 makes it impossible for Plaintiffs to provide the mandated information to their patients but permits these same patients to receive that information from health care providers who lack the same relevant medical training. *See* 10 G.C.A. § 3218.1(a)(13).[8] Even Defendants would have to concede that it would be irrational to, *e.g.*, prevent a cardiologist from obtaining informed consent from their patient prior to performing open heart surgery, but to allow a social worker to explain the risks, benefits, and alternatives of a coronary artery bypass graft to the patient instead. Defendants would also have to concede that if a cardiologist could not be physically present to obtain informed consent at least 24-hours before performing open heart surgery, but offered to provide it over a live, face-to-face videoconference, it would be irrational to insist that a social worker do it in person instead (even if the social worker was an agent of the cardiologist). The same is true here.[9]

Defendants' sole response seems to be that in order to advance the government's stated interest in ensuring informed consent and protecting fetal life, requiring the information be provided *in person* is necessary, and necessarily superior to a live, face-to-face videoconference—regardless of who is providing the information or their ability to ensure that a patient understands it. This argument fails as a matter of law and fact. To start, there are no Ninth Circuit cases upholding a mandatory abortion information law at all, let alone one that imposes an in-person requirement. Nor do Defendants cite a single federal case from outside the Ninth Circuit that

[8] It is no answer that Section 3218.1(a)(13) would also permit another physician to provide the mandated information, as Defendants' argument is that *any* "qualified person" under the statute is superior to Plaintiffs as a matter of law, regardless of their training and experience, solely because they are physically located in Guam.

[9] To be clear, Plaintiffs are not "refusing to affiliate" with a local provider out of self-interest or intransigence, as Defendants unfairly suggest. Opp. 5–6, 8 n.7. Plaintiffs merely want to be able to minimize the burden on their patients and provide the mandatory information themselves, which they are eminently qualified to do. Kaneshiro ¶¶ 90–91; Raidoo ¶¶ 86–87. For Defendants to insinuate that Plaintiffs' motivation is anything other than their patients' best interests is unjustified.

supports their argument either.[10] And, as noted above, *Casey*, the sole relevant Supreme Court case, did not address this question and is readily distinguishable: First, the statute in *Casey* did not impose an in-person requirement and thus the State did not present, and the Court did not consider, whether such a requirement was necessary to serve the state's legitimate interests in the challenged law.[11] Second, *Casey* concerned a challenge to a statute that *prohibited* physicians from delegating the responsibility to provide some of the mandatory information to other health care providers—not the other way around. 505 U.S. at 884–85.[12] Thus, Defendants cannot point to a single controlling, or even persuasive, decision to support their position.

Defendants also fail to contend with the fact that where provisions of mandatory pre-abortion information laws "serve[] no legitimate state interest and make[] little sense under the circumstances" courts have not hesitated to hold them unconstitutional as applied to those circumstances—even when the statute is similar to the one upheld in *Casey*. PI Br. 27. This Court can and should do the same.

---

[10] *Fargo Women's Health Org v. Schafer* did not concern an in-person requirement because the Eighth Circuit held "there is nothing in the statute that requires that [the patient] receive this information during a personal visit. We find no language in the statute that prevents a physician or agent from giving this information over the telephone." 18 F.3d 526, 531 (8th Cir. 1994). The statute in *Planned Parenthood v. Miller*, 63 F.3d 1452, 1467 (8th Cir. 1995), likewise did not require an in-person counseling. And, in *Cincinnati Women's Servs., Inc. v. Taft*, the Sixth Circuit denied facial relief against a law requiring in-person counseling where the abortion clinic already required most patients to attend an in-person counseling visit. 468 F.3d 361, 372–74 (6th Cir. 2006). While both *Karlin v. Foust* and *Barnes v. Moore* considered laws that had an in-person requirement and concluded they did not impose unconstitutional burdens, neither addressed the extent to which the in-person requirement in and of itself furthered a legitimate state interest, let alone as compared to the modern technology at issue in this case. 188 F.3d 446, 485–88 (7th Cir. 1999); 970 F.2d 12, 14–15 (5th Cir. 1992). Finally, the district court in *Utah Women's Center v. Leavitt*, 844 F. Supp. 1482 (D. Utah 1994), *rev'd on other grounds*, 75 F.3d 564 (10 Cir. 1995), similarly concluded that an in-person requirement would be facially constitutional without any relevant analysis of the issues or technology in this case.

[11] The two-trip requirement that resulted from the Pennsylvania law in *Casey* stemmed from the mandatory 24-hour delay and the fact that it was plaintiffs' practices to obtain informed consent in-person, on the same day as the procedure. *See Casey*, 505 U.S. at 968 (Rehnquist, C.J. concurring in part and dissenting in part); *Casey*, 947 F.2d 682, 704–05 (3d Cir. 1991). Of course, at the time, the only alternative to in-person counseling would have been over the telephone, which the statute permitted but was not consistent with the plaintiffs' prior practices.

[12] *Planned Parenthood v. Danforth*, 428 U.S. 52, 65–67 (1976), did not concern the provision of mandatory pre-abortion information, but merely upheld a statute that required informed written consent.

*Raidoo v. Camacho;* Civil Case No. 21-00009
Reply in Support of Plaintiffs' Motion for a Preliminary Injunction                    Page **10** of **20**

Case 1:21-cv-00009   Document 30   Filed 03/13/21   Page 16 of 26

Importantly, Defendants are incorrect that, unlike laws that purport to protect the health of patients seeking abortions, "whatever obstacles [a law purporting to promote fetal life] places in the way of women seeking abortions logically serve the interest the law purports to promote— fetal life—because they will prevent some women from obtaining abortions." Opp. 11 (quoting *Eden*, 379 F.3d at 540). To start, this argument misunderstands the dual-purpose mandatory abortion information laws are supposed to serve, which includes protecting patient health. *See supra* p. 4. Further, the argument cannot be reconciled with the fact that the Supreme Court has held that mandatory abortion information laws "*must* be calculated to inform the woman's free choice, *not hinder it.*" 505 U.S. at 877. Thus, as a matter of law, the extent to which Section 3218.1 makes it more difficult for patients to obtain abortions cannot itself be considered a legitimate benefit.

Defendants fare no better when it comes to the facts. Defendants do not offer the testimony of a single medical professional or any other qualified expert. Rather, Defendants' *counsel* makes repeated and entirely unsubstantiated claims about the benefits of receiving the mandated information in person as compared to through a live, face-to-face videoconference, regardless of who is providing it. Opp. 14–15, 16, 18, 19–20. However, "[t]he lay opinion of [Defendants'] counsel is of no value to this Court on a matter requiring technical expertise." *U.S. v. Weiss*, 847 F. Supp. 819, 822 (D. Nev. 1994); *see also Monroe v. Zimmer U.S. Inc.*, 766 F. Supp.2d 1012, 1034 (E.D. Cal. 2011) ("This Court cannot accept *counsel's* interpretation of the medical literature") (emphasis in original); *cf. Todd v. Stryker Corp.*, No. 2:09-CV-01509-JAM, 2012 WL 2922727, at *6 (E.D. Cal. May 1, 2012) ("[A]s many other courts have noted, counsel's bald advocacy about the significance of complex medical literature, unsupported by an admissible and sufficient expert opinion, cannot raise a genuine disputed fact issue"). Further, the Supreme Court requires more than the government's *ipse dixit* to support the assertion that a law serves a

*Raidoo v. Camacho*; Civil Case No. 21-00009
Reply in Support of Plaintiffs' Motion for a Preliminary Injunction                    Page **11** of **20**

Case 1:21-cv-00009   Document 30   Filed 03/13/21   Page 17 of 26

legitimate state interest in regulating abortion. *See, e.g.*, *Hellerstedt*, 136 S. Ct. at 2311–12 (holding state's evidence of abortion restriction's benefits insufficient); *Doe v. Bolton*, 410 U.S. 179, 195 (1973) (striking abortion restriction where state provided no "persuasive data" it advanced legitimate government interest); *Planned Parenthood Se. v. Strange*, 33 F. Supp. 3d 1330, 1376 (M.D. Ala. (2014) ("[O]utside the context of an undue-burden challenge, a regulatory decision grounded only in such speculation would be an acceptable exercise of the State's police powers. . . [W]hether, under *Casey*, the justification is strong enough . . . is another question entirely").

Here, the undisputed record establishes that the counseling that Plaintiffs provide using live, face-to-face videoconference technology is comprehensive, thorough, and tailored to the needs and circumstances of each patient. Kaneshiro ¶¶ 55–66, 68–69; Raidoo ¶¶ 54–65, 67. In light of this testimony, Defendants' implication that by using telemedicine Plaintiffs seek to "dump information on [their patients] in a cursory and perfunctory fashion," and that the in-person requirement somehow protects against that, is clearly false. Opp. 20. In fact, it is Plaintiffs' unrefuted testimony that using a live, face-to-face videoconference, in particular, allows them to form an even deeper connection with their patients, because it offers a unique window into their patients' lives that is not necessarily possible in a clinical setting. Kaneshiro ¶ 69; *see also* Rebuttal Decl. of Jeffrey Huntsinger, Ph.D., ¶¶ 20–24, attached hereto as Ex. 1. [13]

Plaintiffs' testimony is bolstered by additional expert testimony. For example, Dr. Jeffrey Huntsinger testified that the Defendants' counsel's categorical assertions about the superiority of in-person communication in this context—*e.g.,* that telemedicine does not permit a speaker to convey information with "the same degree of profundity" or have the "same capability for impact"

---

[13] Dr. Huntsinger is a tenured professor of social psychology with over a decade of experience and familiarity with existing research and evidence in the areas of, *inter alia*, judgment and decision making, emotion and cognition, and interpersonal communication, Huntsinger Rebuttal ¶¶ 1–7, as well as familiarity with the research into the use of telemedicine and digital technologies to provide therapy, *id.* at ¶¶ 16–24.

*Raidoo v. Camacho;* Civil Case No. 21-00009
Reply in Support of Plaintiffs' Motion for a Preliminary Injunction                    Page **12** of **20**

Case 1:21-cv-00009   Document 30   Filed 03/13/21   Page 18 of 26

upon the listener—are simply incompatible with existing scientific evidence. Huntsinger Rebuttal ¶¶ 7–24. Dr. Mark Nichols[14] further testified from his vast clinical experience that there is no qualitative difference between providing information and obtaining informed consent via live, face-to-face videoconference and an in-person visit. Nichols ¶¶ 49, 51, 74–75; Nichols Rebuttal ¶¶ 4–7.[15] Dr. Nichols also identified a recent randomized controlled study—the gold standard for scientific evidence—confirming that patient comprehension of information provided for informed consent was virtually identical between patients who received the information in person and patients who received it through a live, face-to-face videoconference. Nichols Rebuttal ¶¶ 8–13. The record also shows that Guam Regional Medical City has announced that, given the advantages of telemedicine, its telemedicine program will continue "after the COVID-19 crisis," with one local neurologist calling it "the way of the future." Compl. ¶ 154.

The closest support Defendants find for their position is dicta from a single opinion from a state intermediate appellate court, which still falls short. Opp. 20 (quoting *Planned Parenthood Arizona, Inc. v. Amer. Assoc. of Pro-Life Obstetricians & Gynecologists*, 227 Ariz. 262, 275 (Ariz. Ct. App. 2011)). The actual question before the court in that case was whether "the legislature could reasonably conclude that *telephonic* consultation was inferior to in-person consultation during which the interviewer could perceive the condition and comportment of the patient, in furtherance of the state's interest in the woman's health." *Id.* That is not the question

---

[14] Dr. Mark Nichols is a board-certified OB/GYN with over three decades of experience who has provided abortion and other pregnancy-related care (including via telemedicine) to thousands of patients, Nichols ¶¶ 1–10, 48–52, 66, and whose opinions are informed by his extensive familiarity with the scientific literature on telemedicine, *id.* at ¶¶ 55–65, 76; Rebuttal Decl. of Mark Nichols, M.D., ¶¶ 8–13, attached hereto as Ex. 2.

[15] Defendants' attempt to reduce this undisputed testimony to mere "preferences" necessarily fails. The Federal Rules of Evidence require "an appropriately credentialed expert witness" to "vet" expert medical testimony. *Lebron v. Sec't of Fla. Dep't of Children & Families*, 772 F.3d 1352, 1371 (2014). Once again, Defendants "effectively ask[] this Court to accept his counsel's lay opinion regarding what is and is not an appropriate inference to draw from the medical evidence" and this "Court [should] decline[] to do so." *McLelland v. Astrue*, No. EDCV 09-1360 JC, 2010 WL 3632731, at * 9 (C.D. Cal. Sept. 13, 2010).

here.[16] And it still fails to address the irrationality of preventing the person most qualified to explain, *e.g.*, fetal and embryonic development, as is required under Section 3218.1, from doing so in favor of a person with no relevant training or experience—particularly in light of Defendants' purported interests.

As the Ninth Circuit has recognized, "[t]here is no disputing that [] affidavit[s] and a complaint may be the basis for a preliminary injunction *unless* the facts are *substantially controverted* by counter-affidavits." *McCormack v. Hiedman*, 694 F.3d 1004, 1019 (9th Cir. 2012). Where, as here, Defendants have failed to controvert a single fact, or cite any binding or even persuasive case law to the contrary, this record is more than sufficient to carry Plaintiffs' burden.

    2.   <u>The Burdens Imposed by the In-Person Requirement Outweigh Its Non-Existent Benefits</u>

Because the benefits of prohibiting Plaintiffs from providing the mandated information to their patients using live, face-to-face videoconference technology are non-existent, Defendants cannot justify the burdens the in-person requirement imposes. These burdens include increased financial and logistical obstacles, as well as unnecessarily forcing patients to identify themselves as seeking an abortion to a clinician who has no relevant role in providing their care. *See, e.g.*, PI Br. 27–30; Nichols ¶ 76; Washington ¶¶ 46–47; *see also Humble*, 753 F.3d at 915–16. Notably, under the Chief Justice's test, the lack of any reasonable relation to a legitimate state interest would be sufficient to render the law unconstitutional as applied—this Court need not even

---

[16] While the court observed that, in the context of the confrontation clause, Arizona courts had recognized the value of in-person testimony over video-testimony, that observation was not necessary to the decision. But even if it had been, the opinion fails to address that the reasons video testimony might not adequately protect a criminal defendant's right to confront the witnesses against them (particularly during a jury trial) do not necessarily apply in the informed consent context. Indeed, the underlying confrontation clause cases make clear that they were informed by evidence concerning the differential effect of in-person and televised testimony on juries, and that even then, "the demands of the confrontation clause are not absolutes" and when the requisite showing has been made "we have not hesitated to permit the use of televised testimony." *State v. Vess*, 157 Ariz. 236, 238 (Ct. App. 1988).

*Raidoo v. Camacho;* Civil Case No. 21-00009
Reply in Support of Plaintiffs' Motion for a Preliminary Injunction        Page **14** of 20

Case 1:21-cv-00009   Document 30   Filed 03/13/21   Page 20 of 26

examine the burdens imposed. *JMS*, 140 S. Ct. at 2138 (Roberts, C.J., concurring). However, applying the balancing test leads to the same result.

With respect to the burdens of the in-person requirement, most of Defendants' brief again misses the point. Opp. 4–10. Plaintiffs have never argued that the in-person requirement forced abortion providers in Guam to retire, prohibits access to abortion outright, or forces patients to travel to Hawai'i for care. Nor have Plaintiffs ever claimed that the requirement imposes burdens on *themselves*, as opposed to their patients.[17]

Defendants' attempts to minimize the unjustified burdens that the in-person requirement does impose on abortion patients' recognized privacy interests by unnecessarily forcing them to disclose their abortion decision to another clinician in Guam also fail. Opp. 6–7; *see also* PI Br. 28. *First*, the Ninth Circuit has already rejected the argument Defendants make here—that protection against unauthorized *public* disclosure of a patient's abortion decision extinguishes any privacy interest in that decision. *See Eden*, 379 F.3d at 551–53 (recognizing that "even if a law adequately protects against *public* disclosure" of abortion patients' identities, that is "no solace to the numerous neighbors, relatives, and friends" of those with protected access to the information) (emphasis in original). The question is thus not whether the additional health care provider will violate their legal and ethical obligations to protect patient privacy, but whether the

---

[17] In addition, Defendants place far too much weight on the notion of an "incidental" burden. To begin with, what *Casey* held was that "a law *which serves a valid purpose* . . . has the incidental effect of making it more difficult or more expensive to procure an abortion *cannot be enough* to invalidate it." 505 U.S. at 874. Here, the in-person requirement does not serve a valid purpose. What is more, contrary to what Defendants seem to be arguing, "incidental" does not mean that any burden, no matter how unjustified or severe, is constitutional if it is not written into the terms of the law. Opp. 4 ("Any burden, if at all, would merely be incidental to the law, not the law itself, and thus, not unconstitutional."). Defendants' understanding of an "incidental burden" would mean that the Supreme Court in *JMS* would have upheld (rather than invalidated) a hospital admitting privileges requirement, which would have left just one clinic and one provider to serve 10,000 patients annually, because the inability of abortion providers to obtain those privileges was due to market forces. 140 S. Ct. at 2122–24, 2129. Likewise, it would mean that the Supreme Court in *Hellerstedt* would have upheld (rather than invalidated) a requirement that abortion clinics meet ambulatory surgical standards, which would have cost $1-3 million per facility and therefore resulted in the closure of all but 7 or 8 abortion clinics in the state, because the inability of the remaining abortion clinics to afford these costs was due to market forces. 136 S. Ct. at 2316–18. This is obviously not what the Supreme Court has held or how the undue burden test works.

*Raidoo v. Camacho;* Civil Case No. 21-00009
Reply in Support of Plaintiffs' Motion for a Preliminary Injunction                                   Page **15** of **20**

Case 1:21-cv-00009   Document 30   Filed 03/13/21   Page 21 of 26

government is justified in forcing patients to reveal the decision to them in the first place. Indeed, as Defendants concede, there is a qualitative difference between being forced to disclose this information and "a woman freely disclosing this decision to someone she chose to provide her with the medical services she seeks." Opp. 6 n.5 (quoting *Planned Parenthood Minn., N.D., S.D. v. Daugaard*, 799 F. Supp. 2d 1048, 1061 (D.S.D. 2011)). That Section 3218.1 forces Plaintiffs to create an agency relationship with the other health care providers in question does not change this fact. Plus, these valid concerns are only heightened in a small community where anti-abortion stigma is prevalent. *See, e.g.*, Compl. ¶¶ 65–70.

**Second**, Defendants' attempt to distinguish existing case law on this subject as "not even involv[ing] legislation or regulations that specifically raise a privacy issue" does not make sense. Opp. 6 n.5. In each of the cases Plaintiffs cite, the courts recognized that the "unnecessary exposure of private or confidential information" concerning abortion can constitute an undue burden. PI Br. 29. What is relevant is the burdens a challenged statute places on an abortion patient's ability to keep their decision private, and whether those burdens are justified, not the terms of the statute itself. *See, e.g.*, *Strange*, 33 F. Supp. 3d at 1355, 1363 (striking law requiring abortion providers to obtain hospital admitting privileges where "State's justifications are exceedingly weak" and law's effects included "causing women to forego their medical confidentiality" and "invasion of privacy" around their abortion decision); *W. Ala. Women's Ctr. v. Williamson*, 120 F. Supp. 3d 1296, 1310 (M.D. Ala. 2015) (recognizing that being forced to disclose plans for abortion care "may present risks to women's employment and safety").[18]

---

[18] Even under the Chief Justice's test, forcing the disclosure of and jeopardizing the confidentiality of this private information could amount to a substantial obstacle, even if the law was otherwise reasonably related to a legitimate government interest. For example, in *Casey*, even though the Court recognized the inherent value of abortion recordkeeping and reporting requirements, it struck a provision that required abortion providers to collect and report "a married woman's reason for failure to provide notice [of her abortion] to her husband"—even though "*the identity of each woman who has an abortion remain[ed] confidential*" to the government and the public. 505 U.S. at 901. As the Court explained, the law imposed an undue burden because it "in effect requires women, as a condition of obtaining an abortion, to [anonymously] provide the Commonwealth with the precise information we have already recognized that many women have pressing reasons not to reveal." *Id.*

*Raidoo v. Camacho;* Civil Case No. 21-00009
Reply in Support of Plaintiffs' Motion for a Preliminary Injunction                                    Page **16** of **20**

Case 1:21-cv-00009   Document 30   Filed 03/13/21   Page 22 of 26

Finally, to the extent Defendants argue any burdens are justified because it is "medically necessary" for every medication abortion patient to obtain in-person pre-abortion testing, this is simply incorrect. Opp. 4–5. The undisputed expert testimony clearly states that such testing is not medically necessary for every patient. Kaneshiro ¶ 53; Raidoo ¶ 52; Washington ¶ 34. The evidence further shows that, even where it is necessary, because many patients have already seen a health care provider to confirm their pregnancy before deciding to have an abortion, they already have these test results, and thus are not required to make any additional visits. Kaneshiro ¶¶ 54, 91; Raidoo ¶¶ 52, 87. Additionally, the evidence shows that a patient need not disclose their intention to seek an abortion to obtain this testing, Kaneshiro ¶ 54; Raidoo ¶ 53, which means that even when they do occur these visits do not implicate the same privacy concerns discussed above. More fundamentally, though, the essence of the undue burden test is that *the government* may not impose requirements on abortion patients if the burdens of those requirements outweigh the benefits. That a physician may deem some sort of in-person care necessary for a given patient does not excuse Defendants from the constitutional limits on their authority to require *all* abortion patients to make an in-person visit for an entirely different (and unjustified) purpose.[19]

\*    \*    \*

As the Ninth Circuit requires, this Court "must weigh the burdens against the state's justification, asking whether and to what extent the challenged regulation *actually advances* the state's interests." *Humble*, 753 F.3d at 913. However, "a burden need not be onerous to be undue if it is not supported by a legitimate state interest." *Eden*, 379 F.3d at 540. Rather, "[t]he severity of the obstacle imposed by any regulation must be examined in context." *Strange*, 9 F. Supp. 3d

---

[19] For that reason, to the extent Defendants argue there is no burden to requiring every patient obtain the mandated information in person because some patients might require *post-abortion* care, Opp. 5, the argument makes even less sense: in the exceedingly rare case that any such post-abortion treatment is required it would necessarily occur after the abortion, not beforehand when the mandated information must be provided. In any event, the undisputed evidence in this case is that less than 5% of medication abortion patients require any follow-up treatment at all, Kaneshiro ¶ 25; Raidoo ¶ 24, and that it is often provided "without any in-person care," Washington ¶ 55.

*Raidoo v. Camacho;* Civil Case No. 21-00009
Reply in Support of Plaintiffs' Motion for a Preliminary Injunction                    Page **17** of **20**

Case 1:21-cv-00009   Document 30   Filed 03/13/21   Page 23 of 26

at 1288. For the reasons set forth above and in Plaintiffs' opening brief, the burdens imposed by the in-person requirement are unconstitutional in this context.

### C. <u>This Court Should Construe the Individual, Private Room Requirement as Waivable By the Patient.</u>

Defendants have asserted that, as a matter of statutory construction, Section 3218.1 does not preclude patients from including support people when they receive the mandated information. Opp. 21. Defendants claim the "section's stated purpose" is to protect patient privacy and confidentiality "which the law accomplishes by creating boundaries addressed to *provider* behavior to ensure the *provider* respects and ensures the patient's privacy." Opp. 21. The upshot, Defendants explain, is that the statute give[s] control of the patient's privacy right to herself." *Id*. By the same logic, if a patient can waive the statutory requirement that the information be provided to them "individually," they can waive the requirement that the information be provided "in a private room." To read the statute to *sub silentio* create one waiver and not the other would make no sense. And, while the reality is that patients are unlikely to waive the private room requirement during an in-person visit in a clinical setting, as Plaintiffs have already explained many of the privacy concerns that relate to in-person counseling at a health care facility simply do not apply in the context of telemedicine where the patient is already in total control of their environment. PI Br. 11–12, 30. To continue to require *Plaintiffs* to ensure their own setting remains private, while permitting patients to waive restrictions on their own setting would therefore be consistent with Defendants' reading of the statute. *See also* Kaneshiro ¶¶ 51–59, 92; Raidoo ¶¶ 50–58, 88. If this Court grants relief with respect to the in-person requirement, this Court should also permit Plaintiffs' patients to receive the mandated information while located in the setting of their choosing, including with another person (or persons) present if they choose. *See* Proposed Order.[20]

---

[20] In any event, because Defendants have failed to respond to any of Plaintiffs' specific arguments concerning

*Raidoo v. Camacho;* Civil Case No. 21-00009
Reply in Support of Plaintiffs' Motion for a Preliminary Injunction
Page **18** of **20**

Case 1:21-cv-00009   Document 30   Filed 03/13/21   Page 24 of 26

## II. PLAINTIFFS SATISFY THE REMAINING PRELIMINARY INJUNCTION FACTORS

Defendants have not refuted Plaintiffs' showing of irreparable harm. PI Br. 32–33. Rather, Defendants have solely disputed that Plaintiffs' patients face irreparable harm based on an argument Plaintiffs never made—that Section 3218.1 "blocks pre-viability abortion and forces people seeking abortion in Guam to travel several thousands of miles for a safe and legal abortion." Opp. 22 (cleaned up). Because Plaintiffs have plainly made a showing of a *threatened* violation of constitutional rights with respect to their actual claims, they have demonstrated irreparable harm. PI Br. 32–33.[21]

That Section 3218.1 has been in effect since 2012 is irrelevant. In *McCormack*, cited by Defendants, the Ninth Circuit affirmed an injunction against a longstanding criminal abortion law that prohibited the state defendants from any *future* enforcement of the law against the plaintiff. 694 F.3d at 1019–20. That is precisely the relief sought here, and the Ninth Circuit has repeatedly held that such relief constitutes a status quo (or prohibitory) injunction, not a mandatory injunction, as Defendants wrongly claim. *See Hernandez v. Sessions*, 872 F.3d 976, 998–1000 (9th Cir. 2017) (citing cases); *see also id.* at 998 ("An injunction is considered prohibitory [as opposed to mandatory] when the thing complained of results from present and continuing affirmative acts and the injunction merely orders the defendant to refrain from doing those acts.") (quoting 42 Am. Jur. 2d *Injunctions* § 5 (2017)).[22]

---

the "private room" requirement, *see* PI Br. 30–31; Compl. ¶ 224, Defendants have waived opposition. *See, e.g.*, *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("[I]n most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue") (citing cases); *see also Gordon v. U.S. Bank National Assoc*, 2017 WL 6551144, *4 (C.D. Cal. 2017) (citing cases).

[21] Moreover, Defendants wholly ignore that this is not the only evidence of irreparable harm for which there is no remedy at law. PI Br. 32–33.

[22] The Ninth Circuit has also never adopted the standard for pre-enforcement injunctive relief purportedly set forth in *A Woman's Choice v. Newman*, *see* Opp. 23 (citing 305 F.3d 684, 693 (7th Cir. 2002)), and even the Seventh Circuit has since held that language was dicta and does not govern pre-enforcement challenges in that circuit, *see Planned Parenthood of Indiana & Kentucky v. Adams*, 937 F.3d 973, 978–80 (7th Cir. 2019), *vacated on other grounds sub nom. Box v. Planned Parenthood of Indiana & Kentucky, Inc.*, 141 S. Ct. 187 (2020).

*Raidoo v. Camacho;* Civil Case No. 21-00009
Reply in Support of Plaintiffs' Motion for a Preliminary Injunction                    Page **19** of **20**

Case 1:21-cv-00009   Document 30   Filed 03/13/21   Page 25 of 26

Finally, Defendants are also incorrect that, if this Court grants the injunctive relief sought, "*none* of [Section 3218.1's] informed consent and 24-hour waiting period provisions would be available." Opp. 24. It is abundantly clear from the Complaint, Plaintiffs' opening brief, and the Proposed Order that the sole relief Plaintiffs seek is an as applied injunction against the in-person and individual, private room requirements solely to the extent that (i) they restrict Plaintiffs' ability to provide the mandated information (at least 24 hours before the abortion) using telemedicine and (ii) they restrict Plaintiffs' patients ability to receive the information using telemedicine in a setting of the patient's choosing, including with another person (or persons) present if the patient chooses. As set forth above, it is likewise abundantly clear from the undisputed evidence that the as applied injunction sought does not interfere with the broader interests Defendants have asserted underlie Section 3218.1. Given the limited nature of this relief, that the Ninth Circuit has clearly held that Defendants "cannot suffer harm from an injunction that merely ends an unlawful practice," *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013), and that "it is always in the public interest to prevent the violation of a party's constitutional rights," *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012), Plaintiffs have satisfied the remaining criteria for injunctive relief.

## CONCLUSION

For the reasons discussed above, and in their opening brief, Plaintiffs respectfully request that the Court issue the limited injunction sought against Section 3218.1.

Respectfully submitted this 13th day of March, 2021.

ALEXA KOLBI-MOLINAS*
*Attorney for Plaintiffs Shandhini Raidoo, M.D., M.P.H. and Bliss Kaneshiro, M.D., M.P.H.*


 /s/ Alexa Kolbi-Molinas
ALEXA KOLBI-MOLINAS
*Admitted pro hac vice*

*Raidoo v. Camacho;* Civil Case No. 21-00009
Reply in Support of Plaintiffs' Motion for a Preliminary Injunction                    Page **20** of 20

Case 1:21-cv-00009   Document 30   Filed 03/13/21   Page 26 of 26