# EXHIBIT 2

Vanessa L. Williams, Esq.
Law Office of Vanessa L. Williams, P.C.
414 West Soledad Avenue
GCIC Bldg., Suite 500
Hagåtña, Guam 96910
Telephone: 477-1389
Email: vlw@vlwilliamslaw.com

Alexa Kolbi-Molinas*
Meagan Burrows*
Rachel Reeves*
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2633
Email: akolbi-molinas@aclu.org

* Admitted PRO HAC VICE

Attorneys for Plaintiffs

# IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| SHANDHINI RAIDOO, *et al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>LEEVIN TAITANO CAMACHO, *et al.*,<br><br>Defendants. | CIVIL CASE NO. 21-00009<br><br>**REBUTTAL DECLARATION OF MARK D. NICHOLS, M.D., IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION** |

**I, Mark D. Nichols, M.D., pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the following is true and correct:**

1. I submit this declaration in further support of Plaintiffs' motion for a preliminary injunction. I previously submitted an expert declaration in this case. All of the information in that document—including my expert opinions (and the facts and data I considered in reaching those opinions), and qualifications—remains true and correct.

2. I understand that Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction states that "[t]he requirement, that a physician or qualified person sit down with the

patient in a private room and communicate the State-mandated information to the patient in person, helps ensure that the woman's important decisionmaking is better informed and exceedingly more considered than if the information is communicated by remote means."

3. In my expert opinion, there is no evidence that in-person communications are inherently superior to live, face-to-face telemedicine in ensuring that patients are well-informed.

4. Ensuring patient consent is well-informed is a foundational aspect of medical ethics. It is my utmost priority to ensure that my patients have all the information they need to make an informed decision, regardless of what they ultimately decide. Like all ethical physicians, I take this responsibility extremely seriously and would never do anything that I believe diminishes my patients' ability to receive and process the information provided to them.

5. In my practice, I regularly counsel and conduct informed consent visits for patients contemplating significant surgeries, such as hysterectomies and tubal ligation, using live, face-to-face videoconferencing as well as in person.

6. There is no meaningful difference between these conversations when they occur in person or via face-to-face videoconferencing. In either setting, I am able to provide patients with the same information, answer any of their questions, and respond to their verbal and non-verbal cues indicating whether I should ask follow-up questions to ensure that they have the information they need to make their decision.

7. Indeed, a hysterectomy is irreversible surgery that permanently affects a patient's fertility by removing their uterus. As a physician, if I thought that obtaining informed consent for such a procedure over a live, face-to-face videoconference was inferior to in-person informed consent, I would not rely on the videoconference for informed consent. Likewise, if I thought that in-person informed consent would make a patient's decision to have major abdominal surgery and permanently remove a reproductive organ "exceedingly more considered" I would not rely

on the videoconference for informed consent.

8. Research confirms that telemedicine is just as effective as in-person communications for informed consent conversations, with no differences in patient comprehension or understanding.

9. This was demonstrated in a randomized controlled trial ("RCT") of in-person and live, face-to-face videoconferencing telemedicine informed consent conversations that used a validated instrument to evaluate and compare patients' comprehension of the informed consent information provided.[1] The study showed that patient comprehension of the information provided was virtually identical between patients who received the information through an in-person conversation and patients who received the information using live telemedicine.

10. In medical research, an RCT is regarded as the gold standard of study design. An RCT study provides the most reliable evidence on the effectiveness of the intervention being tested because the design most effectively minimizes the risk of confounding factors influencing the results. Using an RCT, researchers can ensure that the patient populations being compared are studied at the same time and have similar patient demographics (*e.g.*, age, race or ethnicity, gender). Ensuring that the two groups being compared are studied at the same time and have similar characteristics helps ensure that, as much as possible, any difference found between the groups being studied is the intervention being evaluated.

11. In the case of the RCT evaluating telemedicine informed consent, researchers used an RCT to recruit similar patient populations over the same period of time to determine whether any variations in patient comprehension of the informed consent information was due to the use of live telemedicine versus in-person informed consent. This study was designed as a non-

---

[1] Morgan R. Bobb, et al., *Telemedicine Provides Noninferior Research Informed Consent for Remote Study Enrollment: A Randomized Controlled Trial*, 23:7 J. Soc'y for Acad. Emergency Med. 759 (2016).

inferiority trial. The findings show that face-to-face and telemedicine interactions resulted in no differences in comprehension by subjects in both groups.

12. A validated instrument is a tool used to create a consistent measure of the factor being evaluated in order to compare individuals or groups. The tool is evaluated prior to its actual use in a study to ensure that it can accurately evaluate the metric it is designed to assess. In the context of the RCT assessing telemedicine, the validated instrument was an assessment consisting of a number of questions designed to evaluate patients' comprehension of their informed consent conversation that took place either via telemedicine or in-person. The validated instrument in this study asked patients questions about information they received in order to compare their relative comprehension of the information related to providing informed consent.

13. Because of its use of an RCT study design and a validated instrument, this study provides particularly strong evidence that telemedicine is just as effective as in-person communications for ensuring that patients are well-informed in their decisionmaking and that patients have the same level of comprehension after a telemedicine interaction as after an in-person interaction.

14. For all of these reasons, in my opinion and experience, there is no reason that live, face-to-face videoconference with a patient is any less effective in ensuring that a patient's decisionmaking is well-informed.

*Raidoo v. Camacho*
Rebuttal Declaration of Mark D. Nichols, M.D.

Page **4** of **5**

Case 1:21-cv-00009   Document 30-2   Filed 03/13/21   Page 5 of 6

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 11TH of March, 2021.

_____
MARK D. NICHOLS, M.D.

*Raidoo v. Camacho*
Rebuttal Declaration of Mark D. Nichols, M.D.

Page **5** of **5**

Case 1:21-cv-00009   Document 30-2   Filed 03/13/21   Page 6 of 6